Nearen v. Bakewell.

Nearen *et al.* v. Bakewell *et al.*, *Appellants.*

Division One, June 20, 1892.

110   645
126    10
126    45
127   426
110   645
131   566
110   645
132   238
110   645
138   232
138   281
72a   548
110   645
73a   563
74a   596
110   645
158   686

1.   **Equity**: SALE OF LAND: MISREPRESENTATION. Equity will set aside
     a conveyance of land for material misrepresentations by the vendor as
     to its character and value.

2.   **Practice, Appellate**: WAIVER. Relief will not be granted upon
     appeal to the party not appealing.

*Appeal from Jefferson Circuit Court.*—Hon. J. L.
Thomas, Judge.

Affirmed.

*Thomas & Horine* for appellants.

(1)   Inadequacy of price alone will not warrant a
court of equity in relieving against or setting aside a
contract.   *Holmes v. Fresh*, 9 Mo. 201; *Carter v.
Aleshire*, 48 Mo. 300; *Phillips v. Stewart*, 59 Mo. 491;
*Stoffel v. Schroeder*, 62 Mo. 147.   Bakewell, even after
the first notes were due, offered, by letter, to accept
$800 for the land.   (2)   The evidence does not make a
case of misrepresentations authorizing the relief asked.

*Joseph J. Williams* for respondents.

(1)   The trial court had the witnesses before it,
and heard and passed on their testimony.   It made an
explicit finding in accord with the testimony and evi-
dence offered by the plaintiffs.   This court will defer in
its conclusions in that regard.   *McCann v. Anthony*, 21
Mo. App. 83; *Harris v. Township Board*, 22 Mo. App.
462; *Drosten v. Muller*, 103 Mo. 624.   (2)   The decree

was well supported by the testimony and should be affirmed, except in so far as it relates to the $200 paid by plaintiffs at the time of the purchase. In that respect it ought to be modified by this court. 1 Story's Equity [13 Ed.] sec. 192, p. 205; R. S. 1889, sec. 2304.

BRACE, J.—On the first of January, 1887, the defendant, Judith I. Bakewell, being the owner to her separate use of an eighty-acre tract of land in Jefferson county, Missouri, through her husband, acting as her agent, sold the same to plaintiffs for $1,200, $200 of which was paid in cash, and for the remainder plaintiffs executed ten promissory notes of that date, each for the sum of $100, payable with interest at the rate of eight per cent., one on the first day of January of each successive year thereafter for ten years; and thereupon received a deed from the said Judith and husband, and to secure the payment of said promissory notes the plaintiffs executed and delivered to her a deed of trust upon the land.

This action is brought to cancel said promissory notes and for the return of the cash payment upon the ground of fraud, with tender and deposit of a proper deed of reconveyance. The court found the issues for the plaintiffs, enjoined the collection of the notes, decreed their cancellation, and the delivery of the deed to the defendants; but refused to decree the return of the cash payment upon the ground of the occupation of the premises for a time by the plaintiffs, and that some timber had been taken therefrom by them. The defendants appealed.

The only question in the case is, whether the finding of the chancellor is supported by the evidence. The trade was negotiated by the husband. It appears pretty satisfactorily from the evidence that the land

was an indifferent tract of timbered land worth about $500, without a house on it; about twelve acres of which was in cultivation and about as much more susceptible of cultivation when cleared and broken, having on it a wet weather spring that went dry in early summer. That the defendant, J. B. Bakewell, was a real-estate agent residing in the vicinity and well knew the quality and value of the land, having bought it for his wife about six months before, for $400 cash. That the plaintiff, John C. Nearen, a responsible man, was a stranger to the land and its neighborhood; residing in the state of Illinois, and ignorant of its quality or value. That in the fall of 1886 his attention was called to the fact that Bakewell had lands for sale in Jefferson county, by his advertisement in the *Globe-Democrat.* That about the eleventh of November he came to Jefferson county to see Bakewell about the lands with the view of purchasing. That Bakewell took him to see this tract of land in question.

Nearen testified in substance that there were three or four inches of snow on the ground at the time; that he could not tell the character of the soil and knew nothing about it; that Bakewell represented the soil and the timber to be good; that he pointed out to him forty acres under fence and in cultivation which he said was upon the tract, and that the whole tract was susceptible of cultivation; that he took him to a spring and said it never went dry, affording plenty of water for the place the year round. After learning Bakewell's terms, Nearen went home, and some correspondence by letter then passed between them, which finally resulted in Bakewell visiting Nearen at his home in Illinois about the first of January, 1887, where he again made similar representations to Nearen and his wife in the presence of another witness about the land, in substance, that the land was all tillable and no rocks on it; that if

Nearen could find a rock on it as big as his head he would give it to him; that there were forty acres in cultivation, and good timber on the land, and a never-failing spring of water that afforded plenty of water the year round; that relying upon these representations the trade was consummated.

Mrs. Nearen testified: "I knew nothing about the property and had never been in Missouri. Bakewell came to our house about the first of January, 1887, and staid two days with us; was there on Sunday. He was bragging about Missouri. I told him that I had heard it was very rocky down there, and he said if we could find a rock on the eighty acres as large as his head he would make us a deed to the land. He said it was all good for cultivation and well watered; that there were forty acres of land in cultivation on it and a never-failing spring. This was on Sunday. After we moved down and found out about the land, I went to Mr. and Mrs. Bakewell to take the land back. This was in the summer, some time. I asked Bakewell what he had told us such a story for and asked him to take the land back, and told him he might keep the $200 we had paid him on it. I was interested in the purchase of the land with my husband, and furnished some of the money we had paid. I had some money of my own. I believed what Bakewell said about the land or I would not have agreed to buy it."

Elisha Derbin testified: "I live in St. Clair county, Illinois. I am acquainted with Joseph B. Bakewell and John C. Nearen and wife. I was at John C. Nearen's house in St. Clair county, Illinois, about the first of January, 1887, and met Mr. Bakewell there. I had never seen him before, but met him afterwards in Jefferson county, Missouri. He was talking to Mrs. Nearen on the occasion of my seeing him at Mr. Nearen's house in January, 1887, about the tract of

land that he was then on the trade with Nearen about. He told Mrs. Nearen in that conversation that there were thirty-five acres in cultivation on the tract of land; that the timber was pretty good; that there was a spring on the land that lasted all the year, and that the land was all good; that there was only one small place on it where there was a little gravel, but not enough to interfere with ploughing, and that there were no large stones on it."

John J. Bakewell was the only witness who testified in behalf of the defendants. The substance of his evidence in regard to his representations to Nearen at the time he showed him the land was (that there was no snow on the ground; it was raining and snowing, and the snow melted as fast as it fell) that he showed Nearen the land and told him he did not know how much of the fields in cultivation were on the tract; that he did not know where the line ran; that he did not tell him there was forty acres in cultivation, and did not tell him there was a never-failing spring on the land, but showed him the spring that was there. He said nothing in his evidence in regard to the representations testified to by the plaintiff as having been made by him to Nearen and his wife in Illinois.

In the spring of 1887, Nearen moved with his family to a place near by, that he had rented of Bakewell that had a house on it, for the purpose of improving and cultivating the property he had bought, when he found out for the first time that the cultivated land that had been pointed out to him (except two or three acres) belonged to another man, and that in the tract there was not more than twelve acres in cultivation and not more than twenty susceptible of cultivation, owing to the broken and rocky character of the remainder. He found the timber scrubby, and in May the spring went dry. Dissatisfied with their purchase the plain-

tiffs went to Bakewell and asked for a rescission, offering to forfeit the $200, pay the taxes of the current year, and give them a cow if they would take back the land. This they refused and plaintiffs abandoned the property, returning to their home in Illinois, and afterwards brought this suit.

The foregoing presents the salient facts of this case, and is sufficient to show its complexion. After a careful consideration of the evidence, and a patient hearing of the oral argument of learned counsel, we are satisfied that the conclusion reached by the chancellor is sustained by the evidence.

The respondent complains of the decree, in that it did not give him back a part of his $200, since, upon the most liberal estimate, the use of the land, and the timber cut, could not have been worth more than $50 or $60; but as he did not appeal the decree will have to stand.

The judgment is affirmed. All concur, except BARCLAY, J., absent.