RUTLEDGE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division Two, May 17, 1892.

1. **Pleading: PETITION.** The averments of a petition should be consistent, and the *probata* correspond to the *allegata.*

2. **Railroad:** EMPLOYES, RULES FOR SAFETY OF. The law requires of a railroad company diligence and care, not only in furnishing proper and reasonably safe appliances and machinery and skilful and careful employes, but also to make and promulgate rules for the management and conduct of its business, which if faithfully observed will afford its employes reasonable protection.

3. ———: ———. Rules adopted by the employes which are not regularly prescribed by the company, and obedience to which is not required by it, will not excuse the company for the non-performance of its duty.

4. **Negligence:** RAILROAD: SWITCHMAN: RULES. In an action by a switchman against a railroad company for personal injuries received while uncoupling cars, evidence that the cars moved suddenly, throwing him off and injuring him, and that the company had failed to promulgate and enforce needful rules in regard to its work, is insufficient to justify a recovery, in the absence of any evidence showing a causal connection between the accident and the failure to have the rules.

5. ———: ———: ———: ORDINARY RISKS. Plaintiff cannot recover if the sudden movement was the ordinary result of trains entering on switches.

6. ———: ———: ———: QUESTION OF FACT. Where the evidence fails to show whether it is customary and prudent for switchmen to mount cars to uncouple them, it cannot be declared as a matter of law that the plaintiff was guilty of contributory negligence in so doing.

7. ———: ———: ———: EVIDENCE. It was error to permit plaintiff to state what he would have done had he known that the sudden movement would occur.

8. ———: ———: ———: BLOCKING RAILS. Where plaintiff's arm was caught and crushed between the main rail and the guardrail, the failure of the company to block the rails should not be submitted to the jury as a ground for recovery, since the blocking is only intended to prevent feet from being caught.

*Appeal from Osage Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *W. S. Shirk* for appellant.

(1)   The court should have sustained the demurrer to plaintiff's evidence.   There is neither averment nor proof that the sudden stopping of the train was caused by the absence of the rules.   *Merle v. Hascoll*, 10 Mo. 406; *Harper v. Railroad*, 44 Mo. 488; *Waldhier v. Railroad*, 71 Mo. 514; *Nalle v. Railroad*, 97 Mo. 75; *Ischer v. Bridge Co.*, 95 Mo. 261; *O'Brien v. Steel Co.*, 100 Mo. 182; *Hoben v. Ins. Co.*, 20 Iowa, 562.   (2)   There was no proof as to what caused the train to stop.   (3) Plaintiff's evidence affirmatively shows that the employes had established customary rules among themselves about making cuts and couplings.   If such rule was violated (which the evidence does not show) it was the act of a fellow-servant.   *Slater v. Jewett*, 84 N. Y. 61; *Holden v. Railroad*, 2 Am. & Eng. R. R. Cases, 94. (4)   Plaintiff heard the cars jamming together; hence, was not surprised or taken unawares.   (5)   The guard-rail not being blocked was not the proximate cause of the accident.   Blocking was required only to prevent the employes' feet from being caught.   R. S. 1889, sec. 2627–8.   (6)   It was error to permit plaintiff to testify that he could have escaped injury if he had known the cars were going to move so suddenly.   *Gutridge v. Railroad*, 94 Mo. 468; *Eyerman v. Sheehan*, 52 Mo. 221.   (7)   It was error to refuse to instruct the jury that if plaintiff remained in defendant's service, with knowledge of the absence of the rules, plaintiff could not recover.   *Devitt v. Railroad*, 50 Mo. 302; *Price v. Railroad*, 77 Mo. 508; *Porter v. Railroad*, 71 Mo. 66; *Aldredge v. Furnace Co.*, 78 Mo. 559; *Monegan v. Railroad*, 45 Hun, 113; *Borgenschuetz v. Railroad*, 84 Ky. 330; *Yales v. McCulloh*, 16 Atl. Rep. 280.   (8)   No rules are required unless they are necessary for the safety of the employes, and there are no allegations in

the petition to that effect. *Slater v. Jewett*, 3 Am. & Eng. R. R. Cases, 528; *Reagan v. Railroad*, 93 Mo. 348.

*Ryors & Vosholl* and *J. W. Zevely* for respondent.

(1) The petition is sufficient, and clearly states a cause of action. Shearman & Redfield on Negligence [3 Ed.] sec. 93; 14 American & English Encyclopedia of Law, p. 907; *Abel v. Pres.*, 103 N. Y. 581; *Railroad v. Lavely*, 36 Oh. St. 221; *Shehan v. Railroad*, 91 N. Y. 332; *Vose v. Railroad*, 2 H. & N. 728; *Railroad v. Taylor*, 69 Ill. 461; *McGovern v. Railroad*, 123 N. Y. 280; *Morgan v. Iron Co.*, 15 N. Y. Sup. 609; *Ford v. Railroad*, 124 N. Y. 493; *Byrnes v. Railroad*, 113 N. Y. 251; *Whittaker v. Pres.*, 126 N. Y. 544; *Doss v. Railroad*, 59 Mo. 27; *Reagan v. Railroad*, 93 Mo. 348. (2) The instructions properly declared the law applicable to the issues to be tried by the jury, and if they erred it was in favor of the defendant. (3) There is no variance or failure of proof. The petition does not charge "a starting of the train." The issue made and tried was a sudden unexpected movement of the cars, and the evidence all supports such allegation. Upon this point the appellant's learned counsel misapprehend the facts. (4) The evidence, taken as a whole, clearly shows the existence of a custom amongst the employes, and the non-existence of a rule concerning such a custom. The existence of such a custom only emphasizes the neglect of the master. Authorities cited before. *Ford v. Railroad*, 124 N. Y. 493; *Abel v. Pres.*, 103 N. Y. 581. (5) There is no evidence that plaintiff heard any noise that could have warned him of approaching danger. On page 17 of evidence of plaintiff in appellant's brief, plaintiff replies to a question: "I could have heard the noise made by the cars coming back one on another." This is simply an evidentiary fact. It is

a fact tending to show that he did hear, but not the ultimate fact that he did hear. *Railroad v. Dunlevy*, 22 N. E. Rep. 15. (6) No error was committed by the court in permitting plaintiff to testify that if he had been notified or prepared, or had known that the cars were going to be moved, he could have prevented the accident, and for this reason, the evidence given was not an opinion, but a conclusion of fact derived from personal knowledge, and was admissible. *Hanna v. Barker*, 6 Col. 303; *Sydleman v. Beckwith*, 43 Conn. 9; *Com. v. Dorsey*, 103 Mass. 412; *Railroad v. Yarbrough*, 3 S. Rep. 447; *Railroad v. Miller*, 18 Pac. Rep. 486; *McPherson v. Railroad*, 97 Mo. 253. (7) The court did not err in admitting evidence that the guardrail was not blocked. *Huhn v. Railroad*, 92 Mo. 440. (8) Nor did the court err in refusing the instruction that if plaintiff remained in the company's service after knowledge of the want of rules he could not recover. *Flyn v. Railroad*, 78 Mo. 195; *Ford v. Railroad*, 104 N. Y. 493; *Morgan v. Co.*, 15 N. Y. Sup. Ct. 609; *Huhn v. Railroad*, 92 Mo. 440. Said instruction should have the qualification requiring knowledge "of the danger" consequent on the absence of the rules. Wood on Master & Servant, sec. 376; *Waldhier v. Railroad*, 87 Mo. 37. (9) The case rests upon a demurrer to the evidence, and this court will give to the evidence every inference in support of the verdict, and every conclusion of fact which a jury may fairly draw from the evidence. *Railroad v. Velie*, 26 N. E. Rep. 1087; *Buesching v. Gas Co.*, 73 Mo. 219.

THOMAS, J.—Plaintiff recovered judgment in the circuit court of Osage county for $5,000 damages for personal injuries, and defendant appealed.

Plaintiff was a switchman in defendant's yards at Chamois, and defendant's negligence, which, it is

claimed, caused the injury, is specified by plaintiff in his petition as:

*First.* That the defendant "did not have made and published amongst its employes, at said town of Chamois, any system of signals by which the various servants of defendant engaged in working in the yards aforesaid should be governed, and by the use of which one employe could protect and guard himself against the action of another.

*Second.* That at the place where plaintiff was injured defendant did not have the space between the guardrail and the main rail blocked, by reason whereof his arm was caught between the rail and guard-rail and crushed.

*Third.* That on said twelfth day of August he was ordered by his proper superior to cut off (uncouple) a certain car; that he started back over the cars to uncouple said car, and before he reached it some one unknown to him caused the cars to be moved without notice to him, whereby he was thrown from said car, his right arm caught between the unlocked space between the rail and guardrail, and he was there held, and thereby suffered the loss of his right arm; that it is the custom for the person actually engaged in coupling cars to give all signals for the engine to move the cars in any direction; this custom is merely in use by employes, and not because of any peremptory orders from defendant; that defendant was negligent in not having proper orders published touching the manner of moving cars whilst in the yards, and governing its employes in the discharge of their various and varied duties in said yards while making up trains and coupling and uncoupling cars; that this negligence or failure on part of said defendant to have established such proper system and published rules, regarding said matters, was directly the cause of said train of cars being sud-

denly, without notice to plaintiff, moved, whereby the plaintiff was thrown off and injured.

The answer contained a general denial, and a plea of contributory negligence on plaintiff's part.

I. The court erred in overruling defendant's objection to the introduction of any evidence on the ground that the petition did not state facts sufficient to constitute a cause of action. The allegations are not consistent with each other. It is first averred that plaintiff proceeded, in pursuance of orders given him by the yardmaster, to uncouple the car, and before he reached the proper place to perform that duty *"some one unknown to him* caused the cars to be moved without notice to him, whereby he was thrown from said car" and injured, and then it is averred that the failure of defendant "to have such proper system and published rules regarding said matters was directly the cause of said train of cars being suddenly, without notice to plaintiff, moved," whereby he was thrown off and injured. We do not see how these two allegations can stand together. He first alleged that he did not know who caused the train to move, and, of course, he did not know why and how it was moved, and not knowing this he could not affirm that the movement was the result of the failure to establish rules. It is evident this is a mere surmise, supposition or guess of the plaintiff. The *probata* must correspond with the *allegata*, and the reasons why this petition is defective will more fully appear in the discussion and disposition of the next proposition.

II. Defendant contends that the court erred in overruling its demurrer to the evidence. The evidence on the part of the plaintiff shows that he had been a switchman in defendant's yards in the town of Chamois for fourteen months; that about nine o'clock on the morning of August 12, 1887, a freight train of twenty-

five or six cars going west pulled onto a sidetrack in the said yards, and the yardmaster, Mr. Humphrey, ordered him to cut off (uncouple) the hind car of this train; he went to and climbed onto this car, and after he gave a step or two backwards the car moved suddenly, slacked up, which threw him forward, and he fell between the cars; he caught the brakebeam as he fell, and holding on to it he was dragged about two car-lengths, when his arm got caught between the main rail and a guardrail, and was so badly mashed and injured as to require amputation.    The evidence showed further that the defendant had some rules printed on its time cards, but what those rules were is not disclosed by this record.    It was well understood, however, by the men engaged in the yards, that the person, coupling or uncoupling cars, should give signals for the movement of trains to enable them to perform this duty.

"The law imposes upon a railroad company the duty to its employes of diligence and care, not only to furnish proper and reasonably safe appliances, and machinery and skilled and careful co-employes, but also to make and promulgate rules, which, if faithfully observed, will give reasonable protection to the employes." *Abel v. President, etc.*, 103 N. Y. 581; *Reagan v. Railroad*, 93 Mo. 348.    And it seems to be well settled also that rules adopted by the employes, not regularly prescribed, and obedience to which is not required by the company, will not excuse the company from the performance of this duty.    *Abel v. President, etc., supra; Ford v. Railroad*, 124 N. Y. 493; *Abel case* (second appeal), 28 N. E. Rep. 663.

Conceding every fact which the evidence tends to prove, and every fair inference that may be deduced from the whole evidence, as we are bound to do in passing upon a demurrer to the evidence, our opinion is that plaintiff wholly failed to prove one fact material to his

recovery, and that is the causal connection between defendant's failure to promulgate rules and require obedience to them and the sudden movement of the car, which threw him down, resulting in his injury. The plaintiff was the only witness that testified in regard to the casualty. He could not say and did not say that any signal was given, in pursuance of which the train was suddenly moved. We are left in the dark as to the rate of speed of the train, and the cause of its sudden movement or how violent this movement was. That the train was moving at the time he got on the car, and that it continued to move after he fell, he admits. We may infer, though it is not proved, that the engineer knew the hind car was to be cut off, and that he was slowing up his train for that purpose. But whether the movement in question was caused by this slowing-up process, or in pursuance of a signal from some one, we are not informed. It is not probable that the engineer gave the slack, of his own motion, in order to enable plaintiff to uncouple the car, for he must have been seven hundred or eight hundred feet from plaintiff. The night was a dark one, and he could not have known when the car had reached the point where it was to be left, and, hence, in the absence of evidence that any signal to slack up was given, we may very well infer that the sudden movement was the result of the ordinary operation of trains going in on switches. Indeed, the plaintiff testifies that it is not customary to give the slack in a case of this kind to enable a switchman to uncouple cars. The implication from this is, that trains are slackened by their ordinary movements onto a switch, and that no one gave a signal to slack for the purpose of enabling plaintiff to perform his duty.

At all events we think the plaintiff was bound to prove how and why this sudden movement occurred, and this he utterly failed to do. If the sudden move-

ment was caused by the voluntary action of the engineer or in pursuance of a signal given by some one other than plaintiff, and this action of the engineer was caused or the signal was given by the wrong person because defendant had failed to promulgate and enforce proper rules and regulations in regard to the movement of trains in its yards at Chamois, defendant is liable for the injury caused by such movement. We can appreciate how important it is in the management of trains to have a proper system of signals to protect the employes from danger; and the propriety of conferring on the switchman performing the duty of coupling or uncoupling cars the right to give signals to stop or start is apparent, whether on the cars or on the ground.

On the other hand, if the sudden movement was the result alone of the ordinary operation of the train going onto the switch, plaintiff must be held to have assumed the risk of being thrown off the car by it, and, therefore, cannot recover. This is one of the risks of the employment which the law holds that he assumed when he engaged to perform the work assigned him. He mounted the car while in motion, and he knew it was going in on the switch, and, hence, he should have taken proper precaution against the ordinary movements of the train.

We cannot say, as a matter of law, that the plaintiff was guilty of contributory negligence. The record fails to show whether it was customary and prudent for switchmen to mount the cars to uncouple them or not, or whether he should have remained on the ground.

As the case may be retried we will add that the court erred in permitting plaintiff to state to the jury what he would have done if he had known the sudden movement was going to occur. What he *could* have done is apparent to all, but what he *would* have done is a matter of mere conjecture.

Vol. 110—21

And we also think the failure to block the main and guardrails ought not to be submitted to the jury as a ground of recovery. Blocking is intended to prevent *feet* from being caught and held, and not *hands* and *arms*.

If· defendant is liable for the injury at all, it is liable without regard to whether plaintiff's arm was caught between the rails or not, provided he was not guilty of contributory negligence in the performance of his duty. The judgment will be reversed, and the cause remanded. All concur.