MAY, *Administrator, et al.* v. JARVIS-CONKLIN MORT-GAGE TRUST COMPANY *et al., Appellants.*

### Division One, March 23, 1897.

1. **Appellate Practice:** MORTGAGE SALE OF LAND: APPELLATE JURIS-DICTION. A suit to enjoin the sale of land under a deed of trust on the ground that the debt secured thereby had been paid, is properly appealed to this court rather than to the court of appeals, on the ground that title to real estate is involved.

2. **Equity:** PRINCIPAL AND AGENT: PAYMENT OF NOTE TO SUPPOSED AGENT. A principal is bound to the extent of an agent's apparent authority, and if such principal knowingly permitted its agent to assume authority to collect notes or held him out to the public or to the maker of the note as possessing such authority and the money was paid in reliance thereon, the payment will be good, though in fact no authority was given.

3. ——: ——: ——: INFERRED AUTHORITY. The facts and cir-cumstances of a case reviewed, and the conclusion reached that the agent's authority to collect the debt is implied from the conduct of the principal.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Beardsley & Gregory* for appellants.

(1) This is a suit in equity. The court will grant such relief as should have been granted by the trial court. *Blount v. Skratt*, 113 Mo. 54; *Barrett v. Davis,*

104 Mo. 549; *McElroy v. Maxwell*, 101 Mo. 294. Foster paid the note to Cross, who had not the possession thereof, and, in fact, no authority to collect it. Such payment was made at the risk of the party making it. *Padley v. Neill*, 35 S. W. Rep. 997; *Smith v. Kidd*, 68 N. Y. 130; Jones on Mtgs. [3 Ed.], sec. 964; *Joy v. Vance*, 104 Mich. 97; *Trowbridge v. Ross*, 63 N. W. Rep. 534; Mechem on Agency, secs. 373, 379; 2 Daniels on Negotiable Instruments, sec. 1227; *Security Co. v. Graybeal*, 85 Iowa, 543; *Brewster v. Carnes*, 9 N. E. Rep. 323; 103 N. Y. 556. (3) There was no evidence of such a course of dealing between the parties as would warrant a presumption of authority in Cross to collect. *Donham v. Hahn*, 30 S. W. Rep. 114. (4) The collection of other securities or the interest or part of the principal debt are insufficient to raise any implied authority to receive payment of balance of principal. *Smith v. Kidd*, 68 N. Y. 130; *Cox v. Cutter*, 28 N. J. Eq. 13; *Garrels v. Morton*, 26 Ill. App. 433.

*Sheetz, Miller & Wait* for respondents.

(1) Defendants were responsible for the acts of their agents. *Milstead v. Equitable Co.*, 49 Mo. App. 191; *Larsen v. Lombard Co.*, 53 N. W. Rep. 179; *McLain v. Fickle*, 62 N. W. Rep. 753; *State v. Bristol Savings Bank*, 18 S. E. Rep. 533. (2) It is not what power Cross had, but what third persons had a right to assume. *Nicholson v. Golden*, 27 Mo. App. 132; *Austrian v. Springer*, 34 Am. St. Rep. 350. (3) And in such case it is wholly immaterial whether he had the note in his possession. *Sharp v. Knox*, 48 Mo. App. 169; *Ferneau v. Whitford*, 39 Mo. App. 311. (4) And any construction given by the agent and the maker to an instrument (in this case the application for a loan and the note) binds the principal. *Gibbon v. Gunnel*, 48

N. W. Rep. 250; *Reisenleiter v. Lutherische*, 29 Mo. App. 291. (5) When the agent has the right to take applications and has company's blanks and is acting as its agent, it is estopped from denying the agency. *Thomas v. Hartford Insurance Co.*, 20 Mo. App. 150; *Union Stock Yard Co. v. Mallory*, 48 Am. St. Rep. 341. (6) His authority need not be proven by contract of agency. *Franklin v. Insurance Co.*, 52 Mo. 461; *Brooks v. Jameson*, 55 Mo. 512. (7) Agency may be inferred from circumstances. *Hull v. Jones*, 69 Mo. 587; *Mitchum v. Dunlap*, 98 Mo. 418–421. (8) It is a question for the jury. *Black River Lumber Co. v. Warner*, 93 Mo. 374; *Hamilton v. Home Insurance Co.*, 94 Mo. 353. (9) Because trial judge sees the witnesses equity courts will defer somewhat to the finding of trial judges. *Mathias v. O'Neill*, 94 Mo. 520. (10) Defendant was entitled to no interest. R. S. 1889, sec. 5970. (11) What is usury? "Any shift or device to obtain greater interest is usury." *Glisson v. Newton*, 1 Am. Dec. 559. (12) Antedating a note is usury. *Williams v. Williams*, 15 N. J. Law, 255. (13) Having blanks, deeds, applications, certificates, etc., is persuasive evidence that Cross was their agent. *Summerville v. H. & St. Joe Railroad*, 62 Mo. 391. (14) After revocation of authority the principal is still bound by all his acts till notice to third persons is given of the revocation. *Eadie v. Ashbaugh*, 44 Iowa, 519. (15) A note unless drawn with interest from date draws interest from maturity. *Nicholson v. Golden*, 27 Mo. App. 132; 29 Mo. App. 291, above cited.

MACFARLANE, J.—This suit is to enjoin the sale of land under a deed of trust on the ground that the debt secured thereby had been satisfied.

The suit was commenced by Thomas W. Foster against said trust company, as beneficiary in the deed

of trust, and the sheriff of Livingston county, substituted trustee, who was proceeding to make the sale. The petition charges that on the first day of January, 1886, he executed his note to defendant trust company for $250, and to secure the same on that day he also executed and delivered to A. W. Berkley as trustee a deed of trust with power of sale on two hundred and forty acres of land in Livingston county, describing it. He charges the payment of the note, but that defendants had advertised and were about to sell the land under the deed of trust. He prayed an injunction and general relief. The answer was a general denial. A temporary injunction was granted and the case was tried upon the answer and a motion to dissolve the injunction. Prior to the trial Foster died and the cause was revived in the name of his administrator and heirs.

As a result of the trial the court found that the deed of trust "ought not to be foreclosed, but should be canceled and set aside and that the debt secured thereby has been fully paid and discharged." The decree was as follows: "It is therefore ordered, adjudged and decreed by the court that the injunction heretofore filed in this cause, restraining and inhibiting defendants from selling said lands under said deed of trust, and the same is hereby made perpetual, and defendants, their heirs, administrators and assigns are hereby restrained and forever inhibited from further proceeding to foreclose said deed or make any claim to said lands by reason thereof and that said deed be satisfied of record, and in case of the neglect or refusal of defendants so to do, for thirty days after the determination of this cause, then this decree may be filed as the satisfaction thereof. It is further ordered that plaintiffs recover of defendants their costs in this behalf expended and that execution issue therefor."

Upon the trial it was shown that Jarvis, Conklin &

Company, a partnership, were loan agents having their place of business at Kansas City. Among others they secured loans for the Mutual Benefit Life Insurance Company, of Newark, New Jersey. Persons desiring to borrow money were required to fill up printed forms of applications, as a basis for the negotiation of a loan. These blank applications were furnished to local loan agents throughout the country. These local agents found persons desiring to borrow money, and had them fill out the blank applications, which were forwarded to the firm at Kansas City. The commissions of the agents were paid by the borrower, and which said firm divided with the local agent who took the applications.

J. C. Cross was a local loan agent residing and doing business at Chillicothe, in Livingston county, Missouri. Thomas W. Foster owned a farm of two hundred and forty acres in the same county. Cross was furnished with blank applications by said firm, and had assisted in making several loans. Foster desired to borrow $2,500 and offered to secure the same by deed of trust on his land. In May, 1886, he made application to Cross who had him fill out and sign one of the blank applications, which was forwarded to the firm at Kansas City.

The application opens as follows: "I, Thomas W. Foster, the undersigned, of Cream Ridge P. O., Livingston county, State of Missouri, do hereby appoint Jarvis, Conklin & Co., Kansas City, Missouri, as my agent to procure for me a loan of twenty-five hundred dollars ($2,500), for the term of five years at nine per cent per annum, to be paid annually, secured by first mortgage or trust deed upon the following described real estate situate in the county of Livingston and State of Missouri," and follows with a description of the land, its quality, location, improvement and value, and much other information which is not material to any

inquiry on this appeal.  After agreeing to furnish abstracts of the title at his own expense, Foster agrees as follows:  "I also agree to pay to Jarvis, Conklin & Co., or J. C. Cross, their agent, a commission of four per cent in payment for their services in negotiating this loan, if accepted by them."

The said firm, as agent of said insurance company, agreed to furnish the money on the terms stated in the application.  Foster thereupon executed his note for $2,500, and a deed of trust on the land to secure the same bearing interest at seven per cent.  In order to pay a commission to his agents, he executed and delivered to Jarvis, Conklin & Co. his note for $250, dated January, 1886, payable at their office in Kansas City, two years after date, and secured the same by a second deed of trust on the same land.  These transactions were completed in August, 1886.  The firm paid Cross $62.50 as his commission for the services rendered them.

Some time in February, 1890, there was paid to Cross the sum of $300, which the evidence tends to prove was accepted as full satisfaction of the note.  The note was not at the time in possession of Cross, nor was it ever delivered up to Foster, nor was satisfaction of the deed of trust ever entered upon the record.  Defendant, the trust company, is the successor of the firm of Jarvis, Conklin & Co., and succeeded to their rights in the note and deed of trust.  Defendant insisted upon foster paying the note, and upon refusal they ordered the land sold under the deed of trust.  To prevent the sale, this suit was commenced.

I.  The question of the jurisdiction of the Supreme Court to hear this appeal has been suggested by members of this court.  As the question is an important one to the members of the bar, we think it advisable to give our reason for taking jurisdiction:

The object of this suit is to perpetually restrain the defendants from making a sale of real estate under a deed of trust. The ground upon which the relief is demanded is, that the debt, to secure which the deed of trust was given, has been fully paid and satisfied. The court found that the note had been paid, and rendered a judgment perpetually enjoining a sale under the deed of trust. That the effect of the judgment was to satisfy and render absolutely void the deed of trust, can not be questioned. Indeed, it does so in terms. When a debt securing a mortgage, or deed of trust, has been fully satisfied, the deed itself becomes void and of no effect. The deed is upon that condition. The judgment in this case would, therefore, bar an action to foreclose the deed of trust.

It has been held by this court that a suit to cancel notes and a deed of trust securing them, involves the title to real estate. *Nearen v. Bakewell*, 110 Mo. 645; *Hanna v. Land Co.*, 126 Mo. 9. In the latter case it is said: "Where a muniment of title to real estate is directly assailed and sought to be canceled, this court has jurisdiction." We are unable to make a distinction, and indeed none can be fairly made, as bearing upon the question of jurisdiction, between a suit to cancel a mortgage and one which has the effect of canceling the debt secured thereby and perpetually enjoining the foreclosure of the mortgage. Each directly assails the muniments of title to real estate.

It is true this court has held that suits to enforce liens upon real estate, created by law, do not generally involve the title thereto. In such cases the title is not a matter in controversy and can not be involved in the suit. It is said in a recent case by the court *in banc:* "In general, suits to enforce special tax bills, to foreclose mortgages and enforce mechanics' liens, proceed upon the assumption that the defendant has title and

his title is not drawn in question, the real contest in such case being the validity and regularity of the tax proceedings, or the mechanics' liens or the mortgage." *Barber Asphalt Paving Co. v. Hezel, ante*, p. 228.

But a mortgage or deed of trust is a conveyance of land upon condition. The conveyances are made by the owner and operate as a transfer of the title to the real estate. After condition broken, the grantee therein is entitled to the possession. The deed is a muniment of the right and title of the mortgagee, or the beneficiary in the deed of trust, and any suit, the direct object of which is to defeat or cancel 'the deed, necessarily and directly involves the title to the land. *Hanna v. Land Co.*, 126 Mo. 9. Title to real estate is clearly involved in this suit, and this court has exclusive jurisdiction of the appeal.

II. This suit is in equity and necessitates a review of the evidence. It will readily appear from the foregoing statement that the conclusion to be reached depends entirely upon whether Cross had authority from defendant to collect the note. If he had the judgment should be affirmed, for there is not the least doubt that Foster paid the money to Cross.

Defendant's managers who had charge of the collection of its own notes, and the interest and principal of the notes of their clients, testify most positively that Cross had no authority from the company to make collections of any kind. Their testimony is supported, as will be seen, by corroborating circumstances. It may be agreed also that plaintiff has proved no express authority except as it may be inferred from facts and circumstances proved. But a principal is bound according to the extent of his apparent authority, and if defendant knowingly permitted Cross to assume authority to collect its notes, or held him out to the pub lic or to Foster, as possessing such authority, and tho

money was paid in reliance thereon, the payment will be good though in fact no authority was given. 1 Ency. of Law [2 Ed.], sec. 6, page 985, *et seq.*

The application for the loan made by Foster, which was accepted, acted upon and ratified by defendant, contains this agreement: "I also agree to pay to Jarvis, Conklin & Co., or J. C. Cross, their agent, a commission of four per cent in payment for their services in negotiating this loan." Bearing in mind that this note was taken in satisfaction of the commission, and that the payment was to be made to said firm, "or to J. C. Cross, their agent," the terms of the agreement furnish very strong evidence of apparent or implied authority to Cross to collect the note. It expressly authorizes him to collect the cash payment, if it had been made in cash. It is true, defendant paid Cross his commission in cash, and thereby settled the matter between themselves, but of this fact there is no evidence that Foster had notice. Jarvis, Conklin & Co. and Cross had an agreement by which they were to divide the commissions of which we can fairly assume Foster was informed. As the note was given in satisfaction of commissions, Foster could reasonably infer that both parties were interested in it, unless the fact that it was given to the firm and other circumstances show that Foster had notice that defendant was the sole owner.

But the agreement contained in the application is not the only evidence tending to prove authority to Cross to collect the note. Cross was paid February 21, 1890. On February 8, 1890, the treasurer of defendant wrote Cross as follows: "Dear Sir: We telegraphed you to-day that it will require $352 to settle the second mortgage of T. W. Foster, and hereby confirm the same. The note was dated January 1, 1886, due January 1, 1888, for $250. It provides if promptly

paid it does not draw any interest, but if allowed to become in default it draws interest from date. The amount named is made on a basis of a remittance being forwarded by return mail, which we trust to receive." The evidence does not show the circumstances under which this letter was written. It is plain, however, that it was in answer to a previous inquiry of Cross, or in explanation of some instructions previously given. Cross may have made inquiries in the interest of Foster, or defendant may have directed him to collect the note. The letter is consistent with either theory, but, as the explanatory evidence was in the possession of defendant, and was not produced on the trial, we ought to infer that it was in answer to the inquiry from Cross as to the amount due on the note in order that he might collect it. The last sentence strengthens this inference. A letter addressed to Cross expressing a hope to receive a remittance of the amount of the note without explanation, implies that the remittance will come from the person addressed. This could only be expected in case the note was paid to him. This letter is strong evidence of special and direct authority to collect this note.

It seems also to be entirely reasonable, from the previous dealings of the parties, and from the fact that Cross was originally interested in the commissions, that defendant should have entrusted him with the collection. Defendant would hardly have in its employ an agent it could not trust to collect a small note. But defendant says that by the foregoing letter to Cross the amount due on the note was $352 and not $300, the amount Foster paid, and authority can not be implied to compromise the matter by receiving less than was due. There might be force in this contention if entire fairness appeared from the original transaction. But this does not appear. It appears that the note

was dated in January, 1886, when the application for the loan was not made until May thereafter, and the money was not furnished until August, 1886. It will be seen that there was ground for controversy over the amount that ought to be paid. The amount of the note, it is true, was presumptively the amount to be paid, though the circumstances show that the interest is in excess of the true amount, and that $300 would have overpaid the note if it had been given when the transaction was concluded, and the commission had been earned. Naturally, if defendant entrusted Cross with the collection, authority would have been given to reduce the amount rather than have a legal investigation of the entire transaction.

The evidence shows that defendant sent out notices to Foster informing him when payments were due. These notices contained this information: "We have no agents to collect or receive money for us, and payments other than direct to this company are at your risk." Defendant insists that Foster was thus warned not to pay to Cross. An examination of the evidence shows that these notices were only used to inform borrowers of the maturity of interest coupons on the note given for the money borrowed. Such a notice would undoubtedly have been a reasonable precaution to be required by the lender of the money. Defendant was the agent of the lenders to collect the interest. They may not have been willing to authorize their agent to delegate his authority to another. But this note was made directly to defendant's predecessor, and the lender of the money had no interest in it. The warning contained in the notice did not apply to the payment of this note.

The fact that Cross did not have the note in his possession at the time he received payment, in the absence of proof of special authority to collect it either

express or implied, might be conclusive on Foster, of knowledge that he had no authority. *Cummings v. Hurd*, 49 Mo. App. 146, and cases cited.

Considering all the evidence, the partnership character of the original debt, the letter of February 8, and all the circumstances, our conclusion is that authority to make the collection is implied.

The last sentence of the letter referred to is also significant, and is to some extent explanatory of the payment of the note by Foster without requiring its delivery at the time. The letter says: "The amount named is made on a basis of a remittance being forwarded by return mail." The note was at that time in the possession of defendant at Kansas City. Foster, on reading this letter, would naturally infer that he could pay the note, though Cross did not have possession of it. Such authority is fairly implied.

Upon the whole case we think the judgment right, and it is affirmed. BARCLAY, P. J., and BRACE, J., concur; ROBINSON, J., absent.