H. G. CHERRY, APPELLANT, v. JOHN Q. CHORN, RESPONDENT.*

Kansas City Court of Appeals. November 7, 1927.

1208

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2556, p. 662, n. 85; Corporations, 14CJ, section 1089, p. 709, n. 58; Pleadings, 31Cyc, p. 81, n. 10.

*Chas. N. Sadler* and *Jas. T. Sadler* for appellant.

*Watson, Gage & Ess* for respondent.

WILLIAMS, S. J.—This is an action for damages for an alleged breach of contract. The case is before us on a stipulation embodying an agreed statement of facts, as follows:

"The petition filed in the circuit court on March 10, 1927, is as follows:

" 'Plaintiff for his amended petition states that on or about December 29, 1924, plaintiff for a valuable consideration made to the defendant, a written contract or offer wherein and whereby he agreed to sell to the plaintiff all the stock he owned in Cherry-Tilden Live Stock Commission Company, a corporation, on January 5, 1925, at the book value of said stock on January 1, 1925, and a bonus of two hundred and fifty dollars ($250); that thereafter and on or about January 3, 1925, for a good and sufficient consideration it was agreed by and between plaintiff and defendant, that the time within which said defendant should transfer said stock was extended to January 9, 1925; said contract or offer together with the extension of time thereon is in words and figures as follows, to-wit:

" 'Kansas City, Mo., Dec. 29', 1924.

" 'Contract with H. G. Cherry

" 'I hereby agree to sell all of my stock in the Cherry-Tilden L. S. Commission Co., a corporation, for its Book Value Jan. 1, 1925 and a bonus of $250 for good will and other valuable considerations, said stock to be transferred on Jan. 5, 1925.

" 'JOHN Q. CHORN.' "

"That a verified copy of said paper was filed therein with the original petition and is now on file in this court in this cause and is hereby referred to and made a part hereof, that plaintiff accepted

said offer at the time the same was made and agreed to said extension; that the defendant failed, neglected and refused to convey the stock referred to, to said plaintiff, and on January 9, 1925, this plaintiff served upon and delivered to said defendant his written acceptance of said offer and tendered to said defendant the full amount of money provided by said contract and demanded that said stock be transferred to him, which said acceptance is in words and figures as follows, to-wit:

"Kansas City, Mo., January 9, 1925.

"To John Q. Chorn

412-414-416 Live Stock Exchange Bldg.,

Kansas City, Mo.

"I desire to close the contract executed by us on December 29, 1924, which was to have been closed January 5, 1925, and was by agreement extended to January 9, 1925, wherein and whereby you agreed to sell to me all the stock owned by you in the Cherry-Tilden Live Stock Commission Company for its book value as shown by trial balance made on January 1, 1925, and a bonus of $250. The trial balance furnished me shows the book value of said stock on said date to be $38.22 per share, and I understand that you now own forty-nine shares of stock, and I am now ready to close the deal and am ready to pay you the said bonus of $250 and $38.22 per share for each share of stock now owned by you, and I hereby tender you said bonus and the sum of $38.22 per share for 49 shares of said stock amounting in the aggregate to $2122 and I hereby demand that you transfer to me said shares of stock as provided by our contract.

"(Signed) . H. G. CHERRY."

"'That the original of said acceptance was delivered to and is now in the possession of said defendant; that on January 1, 1925, the book value of said stock was $38.22 per share; that on January 9, 1925, the time fixed by said contract, the defendant was the owner of forty-nine (49) shares of the capital stock of said company; that on said January 9, 1925, this plaintiff tendered to said defendant the book value of the shares of said stock, to-wit, $38.22 per share, and the $250 bonus provided for in said contract and offer and demanded that plaintiff (defendant) transfer and turn over to this plaintiff said forty-nine (49) shares of stock; that said defendant thereupon refused to comply with the terms of said contract and refused to transfer to said plaintiff said shares of stock; that this plaintiff closed out the other business in which he was engaged and made arrangements for money, and prepared himself to take charge of and go into said business on the said January 5, 1925; that he was greatly damaged by such failure and refusal of said

defendant to comply with the terms of said contract; that he was damaged by such refusal in the sum of five thousand dollars ($5000),

" "Wherefore plaintiff prays judgment against defendant for said sum of five thousand dollars ($5000) together with his costs herein expended.'

"Defendant duly filed his demurrer to said amended petition in words and figures as follows, to-wit: (Caption and signatures omitted):

" 'Comes now the defendant and demurs to the first amended petition of the plaintiff filed herein for the reason that the same fails to state facts sufficient to constitute any cause of action against this defendant.

" 'Wherefore defendant prays that said petition be adjudged insufficient.'

"The above demurrer was duly taken up and sustained by the court, to which action and ruling of the court plaintiff duly excepted and saved his exceptions at the time.

"Plaintiff refused to plead further, and thereupon defendant files his motion to dismiss said cause, and the court sustained said motion and dismissed said cause and judgment of dismissal was duly made and entered of record, to which action and ruling of the court the plaintiff duly excepted and saved his exceptions at the time.

"Thereafter and in due time, plaintiff filed his application and affidavit for appeal in due and legal form and an appeal was duly allowed to the Kansas City Court of Appeals.

"The only question or issue involved in this appeal is whether or not plaintiff's amended petition, hereinbefore set out, states a cause of action."

A general demurrer to the petition was sustained by the trial court. The propriety of that ruling is now before us.

The paper copied into the petition bearing date of December 29, 1924 is not entirely clear as to whether the offer was to sell the stock owned by defendant on December 29th or owned by him January 5th. The same may be said as to the extension. However, the plaintiff under date of January 9, 1925, in writing to the defendant used the following language:

"And I understand that you *now* (italics are ours) own forty-nine shares of stock." The pleader seems to adopt the same theory for in the petition it is recited:

"*That on January 9, 1925, the time fixed by said contract* (italics are ours) the defendant was the owner of forty-nine shares of the capital stock of the company." Again as against a general demurrer to the petition, an ambiguity in the petition is "to be taken most strongly in its interpretation against the pleader." [Price v. Mining Co., 83 Mo. App. 470.]

We think, therefore, for the purpose of this suit, that the petition should be construed to mean that the stock owned by defendant on January 5th or 9th was offered.

The situation then presents itself; an offer was made on December 29, 1924, to sell all the stock owned by the defendant on January 5th which offer was extended to January 9th.

It is pertinent to inquire how much stock would the defendant own on January 9th? Could not the vendor have complied with the contract by owning a greater or less amount of the stock than he owned on December 29th?

The general rule is, that if the vendor does not undertake to deliver a definite quantity, the contract is unilateral, lacking in mutuality, and neither party can be held thereon. [George W. Jennings, Inc. v. Hirsch Rolling Mill Co., 242 S. W. 1003; Hudson v. Browning, 264 Mo. 58; H. P. Reigart v. Manufacturers Coal & Coke Co., 217 Mo. 142; Crane v. Crane & Co., 105 Fed. 869; Bauer v. Lumaghi Coal Co., 70 N. W. 634.]

The exceptions to this general rule are, that if the quantity to be sold or offered, can be determined, or if there is a slight variation, the contract may still be good. [George W. Jennings, Inc., v. Hirsch Rolling Mill Co., 242 S. W. 1003.]

However, in this case we have no such situation as will bring the case within the exceptions to the general rule.

By way of illustration, suppose the contract had been for all the stock owned by plaintiff in two years from the date of the contract. Could it be contended that such a contract would be binding and would not the amount of stock owned be left to the wish of the vendor? This situation would render the contract unenforceable. The same principle would apply if the time was only a week or two. Under the pleadings in this case, the vendor might have complied with the contract by having one share or by having all the stock in the corporation.

Judge GROSSOUP, in discussing a case, in which the same principle applies, said: "Should prices fall, it could not compel the plaintiffs in error to give further orders; but, should prices rise, the orders sent in would be compulsory, and the loss measured, both by the increase of the ratio of profits, and the probable increase of the quantum of orders. It is needless to say that such a contract is unilateral, and void for want of mutuality." [Crane v. Crane & Co., supra, l. c. 872.]

It is contended that the closing out, by plaintiff, of another business, made the contract in question good. No authorities are cited in support of this proposition. We do not think that any action taken in a matter not connected with the contract sued on, could effect the rights of the parties, under the contract in the case at bar.

While the question, as discussed in this opinion, was not pressed in the briefs or oral argument, still it was properly raised by general demurrer. It is the duty of this court to uphold the judgment of the circuit court if possible, therefore, we have disposed of the case upon the theory disclosed in this opinion.

We think under the view we have taken of this case it is unnecessary to discuss the other questions presented in the briefs.

The court properly sustained the demurrer to the petition.

Judgment affirmed. *Arnold, J.,* concurs; *Bland, J.,* concurs in a separate opinion; *Trimble, P. J.,* absent.

BLAND, J. (concurring.)—Upon the original submission of this cause I was, and am now, of the opinion that the position of defendant, as shown in his brief and oral argument, was and is wholly untenable. Consequently a disagreement arose between Judge ARNOLD and myself and Judge WILLIAMS was selected as a special judge to sit in the case. I have concluded that Judge WILLIAMS has properly construed the allegations of the petition.

I am of the opinion that the petition is ambiguous in its allegations as to whether the shares of stock sought to be sold were those owned by defendant when the contract was signed or when it was to be executed. If the former, the contract is good; if the latter, it is bad. The petition is, therefore, ambiguous, and under the rule that all ambiguities are to be taken against the pleader (Price v. Mining Co., 83 Mo. App. 470), the petition must be construed as Judge WILLIAMS has held. We are required to uphold the judgment of the trial court if we can do so upon any ground even though the reason advanced by us may not be suggested by counsel. I, therefore, concur in the opinion of Judge WILLIAMS.