A. J. Koewing et al., Appellants, v. Greene County Building & Loan Association and E. C. Hamlin.—38 S. W. (2d) 400.

Division Two, April 14, 1931.

*John W. Booth, Fred H. Kasmann, Abbott, Fauntleroy, Cullen & Edwards* and *Edwin C. Luedde* for appellants.

682

*Hamlin, Hamlin & Hamlin* for respondents.

COOLEY C.—Suit to cancel a deed of trust on the ground that it was never delivered, therefore never had validity. The circuit court sustained defendants' demurrer to plaintiffs' amended petition. Plaintiffs declined to plead further and the court entered judgment dismissing the case, from which plaintiffs appealed.

Appellate jurisdiction is in this court, because the action involves title to real estate. See Loewenstein v. Queen Ins. Co., 227 Mo. 100, 127 et seq., 127 S. W. 72; Conrey v. Pratt, 248 Mo. 576, 154 S. W. 749; Linneman, et al. v. Henry (Mo.), 291 S. W. 109.

The amended petition, demurrer to which was sustained, states that at the times therein mentioned plaintiffs were husband and wife, residing at the village of Treloar in Warren County, Missouri, where plaintiff A. J. Koewing was cashier of a bank; that defendant Greene

County Building & Loan Association was a corporation with its principal office and place of business at Springfield, Missouri; that said A. J. Koewing owned certain real estate, to-wit, Lot 3 in Block 3 of McGavock's Addition to the Town of Franklin, in Howard County, Missouri; that one Floyd Tempel, at and prior to the time of the transaction involved, was a resident of the said town of Franklin and cashier of the Franklin State Bank at that town, and "a man of good repute and standing, in business in that community." The petition then states:

"Par. 6. That on or about the 10th day of March, 1926, A. J. Koewing offered to sell his real estate to said Tempel for the sum of $3,542. Thereupon said Tempel proposed to said A. J. Koewing that said Koewing should borrow the sum of $2,500 from said association and secure payment thereof by a deed of trust conveying said Lot 3, with the buildings and improvements thereon, and proposed to said Koewing that if he would so incumber his said real estate and would sell the same to him, said Tempel, subject to such incumbrance, he would buy the interest and estate of said A. J. Koewing in said Lot 3, subject to said incumbrance, and pay him therefor the sum of $3,542; and thereupon, said A. J. Koewing agreed to and did verbally sell his interest and estate in said Lot 3 according to the terms thus proposed for the sale and purchase thereof.

"Par. 7. That, thereupon, said Tempel called upon said Koewing to exhibit to him (Tempel) his, the said Koewing's, deed under which he held title to said Lot 3, for his use in and about the drawing of deeds suitable and proper to the accomplishment of the said agreement last aforesaid, and in due time thereafter said Koewing duly complied with that request, and in due time thereafter said Tempel tendered to said Koewing, on the 17th day of May, 1926, a prepared form of deed for use as proper for securing for said A. J. Koewing a loan of $2,500 from said association, and also a prepared form of deed for use as proper for conveyance to said Tempel of said Lot 3 subject to conveyance in trust for the benefit of said association, all in accordance with said proposed contracts and agreements; and thereafter, said A. J. Koewing and his wife, Louise Koewing, as such, signed and acknowledged said forms of deeds before John F. Eichmeyer. notary public in and for the County of Warren of the State of Missouri. on the 18th day of May, 1926.

"Par. 8. That said forms of deeds being so signed and acknowledged, said A. J. Koewing thereupon at once transmitted that one thereof so prepared for securing a loan to be made by said association on said Lot 3 to said Franklin State Bank, to be held by it until said loan should be made to said Koewing, and retained the one thereof (that is, the deed for use by A. J. Koewing in transferring the title to said Lot 3 to said Tempel to be held by said Tempel sub-

ject to the lien of deed of trust for benefit of said association), and that deed has ever since remained in the possession and control of said A. J. Koewing.

"Par. 9. Plaintiffs allege that the deed last aforesaid herein referred to as transmitted by said A. J. Koewing to said Franklin State Bank after the execution by said A. J. Koewing, was never delivered by said A. J. Koewing to any person or corporation, but that on the 21st day of May, 1926, the same was, by some person or corporation, whose name is unknown to plaintiffs, or either of them, filed for record in the Recorder's office of Howard County, and the same is of record in said office in deed book 128, at page 1; and said record thereof does not show by what person or corporation, other than the Recorder of Deeds or his deputy, the same was filed in that office. And said A. J. Koewing and his wife, Louise Koewing, further say that they, or either of them, never received any money or other valuable consideration for said deed last referred to."

It is then further alleged in substance that subsequently, to-wit, on November 4, 1926, said Tempel was convicted of a felony and sentenced to serve a ten-year term in the penitentiary and has since been there imprisoned, by reason whereof he became and has since been civilly dead and incompetent to carry out any contract to acquire real estate and particularly incompetent "to buy and acquire title to or possession of said Lot 3 as contemplated in and by said oral contract between said Tempel and said A. J. Koewing;" that when Tempel so became civilly dead "and incompetent to make a lawful contract in accordance with the terms of said oral contract with said A. J. Koewing, said A. J. Koewing was not bound in any contract whatsoever with said Tempel and was not bound in any contract whatsoever with said (defendant) association . . . ;" that the deed of trust purports to be a conveyance by plaintiffs to defendant E. C. Hamlin as trustee for his co-defendant; that said Hamlin as such trustee is threatening to sell said real estate under said deed of trust and that such threatened sale would constitute a cloud on plaintiffs' title.

The petition closes with a prayer for judgment as follows:

". . . and plaintiffs pray judgment against said defendants decreeing the said instrument, purporting to be a conveyance of said Lot 3, to be, and to have always been, inoperative, null and void against plaintiffs and each of them for want of any legal delivery thereof to said E. C. Hamlin or to any other person, natural or artificial, either by said A. J. Koewing or by his said wife, and adjudging and decreeing for want of such delivery any sale of said Lot 3 which may be made as is threatened as aforesaid to be absolutely null and void as against said A. J. Koewing, and as against said Louise Koewing, and as against all other persons having any

title or estate in said lot or any part thereof acquired from or under said A. J. Koewing.

Plaintiffs also pray judgment for costs herein, and for all such other and further relief as may be proper and equitable in the premises.''

The petition states in substance (par. 6) that Tempel proposed to A. J. Koewing that the latter borrow $2500 from defendant association, securing it by deed of trust on said Lot 3 and that Tempel would buy the property subject to such incumbrance, to which Koewing agreed; (par. 7) that thereupon Tempel requested and Koewing furnished him data from which to prepare the necessary conveyances and did prepare and send to Koewing for execution by himself and wife ''a prepared form of deed for use as proper for securing *for said A. J. Koewing* a loan of $2500 from said association . . .'' which plaintiffs duly signed and acknowledged; (par. 8) that Koewing then sent the deed of trust so signed and acknowledged to the Franklin State Bank (of which Tempel was cashier) ''to be held by it until said loan should be made to said Koewing.'' The petition further shows that the deed of trust was filed for record and recorded very soon thereafter and shows also, we think, that the instrument is in possession of defendants, because it is alleged in a subsequent paragraph that defendant Hamlin, the trustee named therein, is threatening ''as trustee under and by virtue of said pretended deed of trust'' to sell the property therein described ''at the request of some party described as 'the legal holder and owner of said bond or note.' '' Those allegations, unless negatived by other allegations of the petition, would necessarily imply that the deed of trust had been delivered. Proof of such facts, unless overcome by countervailing evidence, would sufficiently establish delivery. ''When a deed has been executed and acknowledged, the possession of it by the grantee is presumptive evidence of its delivery.'' [Pitts v. Sheriff, 108 Mo. 110, 115, 18 S. W. 1071; see also McFarland v. Brown, 193 S. W. 800, 806, and Crutcher v. Stewart, 204 S. W. 18.]

In Burk v. Pence, 206 Mo. 315, 339, 104 S. W. 23, it was held that under the statute, now Section 3048, Revised Statutes 1929, the certificate of acknowledgment is prima-facie evidence that the deed was signed and delivered. To same effect see Keener v. Williams, 307 Mo. 682, 701, 271 S. W. 489, 494, and cases cited. And see also Johnson v. United Railways Co., 227 Mo. 423, 449, 127 S. W. 63, wherein, in discussing a petition to which a demurrer had been sustained, the court said that a necessary implication is the same as an allegation. Facts which are necessarily implied need not be alleged. [Werth v. City of Springfield, 78 Mo. 107.]

Appellants contend that non-delivery of the deed of trust is alleged in paragraph 9 of the petition. If there is in the petition a

plea of non-delivery or a negation of facts pleaded elsewhere therein which, unless negatived, amount at least to an admission of delivery, it must be found in said paragraph 9. It is stated in that paragraph that the deed of trust "was never delivered *by said A. J. Koewing to any person or corporation* . . ." and that neither of the plaintiffs received any money or other valuable consideration for it. (Italics ours.)

If the above quoted language of paragraph 9 was intended to mean delivery in the literal sense of a manual delivery of the instrument it contradicts and is contradicted by the allegation in paragraph 8 that Koewing did· transmit the instrument to the Franklin State Bank. The allegations would be inconsistent and could not stand together. A petition the substantive allegations of which are contradictory of each other is not good. [Rutledge v. Mo. Pac. Ry. Co., 110 Mo. 312, 318, 19 S. W. 38.] If by said language it was intended to state that there was no legal delivery to the grantee so as to pass title, even though the instrument may have been given to defendants by the bank to which Koewing had delivered it, the statement in paragraph 9 is of the nature of a legal conclusion rather than a statement of facts from which such non-delivery would appear. That the latter was what the pleaders meant is inferable, both because otherwise the allegations of paragraph 9 would contradict what they had specifically stated in paragraph 8 and because in the prayer of their petition they ask to have the instrument decreed void "for want of any *legal delivery* thereof to said E. C. Hamlin, or to any other person natural or artificial, either by the said *A. J. Koewing or by his said wife.*" (Italics ours.) The allegation in paragraph 9 that neither said A. J. Koewing nor his co-plaintiff wife received any money or other valuable consideration for the deed of trust is subject to similar criticism.

In this connection it may be observed that the petition does not in paragraph 9, nor elsewhere, except by inference in the above quoted part of the prayer, allege that plaintiff Louise did not deliver the instrument. But if it contained the same allegations as to non-delivery by her as it does relative to non-delivery by A. J. Koewing, would it be sufficient?

We think the petition in paragraphs 6, 7 and 8 states facts which show that Koewing constituted the Franklin State Bank his agent, with at least apparent, if not actual authority to receive the money· from and deliver the deed of trust to defendant association for him. He ·lived at a place distant from the location of the association. He pleads (par. 7) that Tempel prepared and sent him for execution a deed proper "for securing for said A. J. Koewing" the loan from defendant association. Who negotiated or was to negotiate the loan? He nowhere states or intimates in the petition that he personally conducted the negotiations with the association. The

reasonable inference from the facts pleaded is that he left it to Tempel to arrange for the loan and then sent the signed and acknowledged deed of trust to the bank for it to complete the loan for him by receipt of the money and delivery of the security, acts which are usually and naturally contemporaneous. It is well known that banks are appropriate and much used agencies through which to conclude transactions involving the simultaneous payment of money and surrender or delivery of securities evidentiary thereof between contracting parties living or located distant from each other. Koewing had put the deed of trust, signed, acknowledged and ready for delivery, in the possession of the bank. From the facts pleaded it is clear that defendants had every reason to believe that the bank represented and was authorized to act for plaintiffs in concluding the loan.

If the bank had actual authority to act for plaintiffs in closing the loan and did so act, and defendant paid it the money and received from it the deed of trust in good faith without notice of facts, if any, restricting the bank's authority so to act, it can hardly be contended that plaintiffs are not bound.

So, too, if the bank had apparent authority so to act. The rule that a principal is bound by acts of his agent within the apparent scope of the agent's authority is thus stated in Johnston v. Milwaukee & Wyoming Inv. Co., 46 Neb. 480, 64 N. W. 1100:

"That where a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it."

We think the rule as thus stated is applicable to the facts pleaded herein. The rule that a principal is bound according to the extent of the agent's apparent authority was recognized in May v. Jarvis-Conklin Trust Co., 138 Mo. 275, 39 S. W. 782, an action to cancel a deed of trust, and in Johnson v. Hurley, 115 Mo. 513, 22 S. W. 492, a suit to compel specific performance of a contract to sell land. See also Federal Reserve Bank v. Millspaugh, 282 S. W. 709; 41 C. J. 428, sec. 296.

Where the facts constituting a defense of estoppel appear on the face of the petition the petition is subject to demurrer. [Stone v. Cook 179 Mo. 534, 548, 78 S. W. 801.]

Having pleaded facts which showed apparent if not actual authority in the bank to deliver the deed of trust and which showed possession of that instrument in the grantee, plaintiffs should have pleaded further the facts, if any, showing non-delivery or unauthor-

ized delivery by the bank. That they did not do. There is no allegation in the petition that the bank did not receive the money and deliver the instrument to defendant association, unless as a conclusion from the statement above quoted that A. J. Koewing did not deliver it to any person or corporation. There is no allegation that the bank did not have authority to receive the money for plaintiffs from defendant association and to deliver the deed of trust, and no allegation to the effect that the association did not in good faith pay over the money to the bank relying upon the security of the deed of trust. Neither are any facts alleged showing, or from which it could reasonably be inferred, that defendants had knowledge or notice of the agreement or the terms thereof between Koewing and Tempel relative to the purchase by the latter of Koewing's real estate.

Plaintiffs' pleading relative to non-delivery, as pointed out above, is ambiguous and is either contradictory of other allegations of the petition or in view of other allegations is the statement of a conclusion of law rather than a statement of facts. The statement of a conclusion of law is not admitted by a demurrer. [Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388, 397, 69 S. W. 355.] The duty rests upon the pleader to express his meaning clearly (Lappin v. Nichols, 263 Mo. 285, 291, 172 S. W. 596), and a pleading which is ambiguous or in which doubt or confusion appears, is to be taken most strongly in its interpretation against the pleader. [Price v. Morning Star Mining Co., 83 Mo. App. 470; State ex inf. v. Delmar Jockey Club, 200 Mo. 34, 65, 98 S. W. 539, 541; Cherry v. Chorn, 221 Mo. App. 1207, 299 S. W. 598; Brier v. State Exch. Bank of Macon, 225 Mo. 673, 682, 125 S. W. 469.]

Much of appellants' brief is devoted to a discussion of that part of the petition relative to Tempel's subsequent conviction and incarceration for felony and his consequent alleged incapacity to carry out his agreement to purchase the real estate. Appellants argue that the agreement between Tempel and Koewing relative to the loan and their agreement for the sale and purchase of the real estate constituted a single and indivisible contract; in other words, that the deed of trust and the warranty deed made at the same time by plaintiffs to convey Lot 3 to Tempel must be construed as one contract, all of which must have been carried out before defendant association could acquire rights under the deed of trust. Granting that as between Koewing and Tempel there was but one contract, we cannot see how that fact can affect defendants' rights. So far as shown by the petition defendants had nothing to do with the agreement between Koewing and Tempel and had no knowledge or notice of its terms. They were not parties to that agreement and no facts are alleged charging them with notice thereof. All the association knew was that a loan was sought from it. If it made the loan, paying the

money to the bank and relying upon the bank's apparent authority to act in the premises, its rights thereupon became fixed.

It is also contended that the agreement between Koewing and Tempel relative to the loan was a contract for the benefit of a third party (the association) whose rights were therefore dependent upon the terms of the agreement between the contracting parties. Under the facts pleaded that principle does not apply.

We think the petition failed to state a cause of action and that the judgment of the circuit court should be affirmed. It is so ordered. *Davis* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.