# BURK et al. v. PENCE, Appellant.

### Division One, July 13, 1907.

1. **PLEADING: Heirship: Deed: Avoidance.** Plaintiffs in their petition may allege that a certain person died intestate and the owner of certain land, that they are his heirs, and that defendant is in possession and refuses to yield possession to them, and those allegations state a good cause of action. And to that petition defendant may answer that the intestate in his lifetime executed and delivered to him a good and sufficient deed and that he is in possession under said deed. And to that answer plaintiffs may reply that the deed was never delivered and that the deed was void because of the incapacity of the grantor and the undue influence exercised over him by defendant. The plaintiffs are not required, in such case, to plead in their petition the matters set forth in the reply. On their petition as drawn, they are entitled to judgment unless defendant sustains the affirmative defense of the answer; and defendant makes his *prima-facie* case by presenting a deed duly acknowledged, and thereupon the burden shifts to plaintiffs to show that the deed was invalid. [**Woodson, J.**, dissenting, in separate opinion.]

2. **CONVEYANCES: Delivery: Undue Influence: Incapacity: Evidence.** The evidence in this case is reviewed and *held*, to clearly show a delivery of a deed from the intestate to the defendant, and not to show that any undue influence was exercised, or that he was incapacitated to execute it.

3. ————: **Prima-Facie Proof: Acknowledgment.** The statute does not relieve the grantee in a deed of the burden of proving its execution, that is, that it was signed and delivered by the grantor; but it does make the certificate of acknowledgment take the place of the evidence that would otherwise be required of the grantee going to show that the deed was signed and delivered, and that certificate is *prima-facie* evidence that the deed was duly executed, but it is not conclusive evidence. It may be assailed by proof that it was not signed and delivered, and that may be done under a general denial of its due execution.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

REVERSED AND REMANDED (*with directions*).

*L. F. Cottey* and *D. A. Rowner* for appellant.

(1)   The judgment is not responsive to the issues made by the pleadings in the cause.   The title to be adjudicated is the title which the plaintiffs assert and the defendant denies, which in this case is thirty-four forty-eighths of the land described in the petition. By the plain terms of the statute no right or title can be litigated in this sort of suit, save and except such as may be asserted by the plaintiff, and denied by the defendant, respectively.   Graton v. Land & Lumber Co., 189 Mo. 332; Gage v. Cantwell, 191 Mo. 706; Roden v. Helm, 192 Mo. 94; Schneider v. Patton, 175 Mo. 723; Ross v. Ross, 81 Mo. 84; Newham v. Kenton, 79 Mo. 382. It is equally well settled that the decree which is awarded a plaintiff must be authorized both by the facts stated in the petition and the proof.   Reed v. Bott, 100 Mo. 62.   The judgment or decree in this case is broader than it is authorized by the allegations of the petition, and is not responsive to the issues under the pleadings, and is, therefore, erroneous and void. (2)   A careful examination of the so-called evidence of witnesses Howerton, Campbell and King, shows conclusively that it does not amount to a contradiction of anything testified to by witness Padgett.   (3) The judgment is not supported by the evidence.   The uncontradicted evidence is that the grantor, in his lifetime and when of sound mind, made, executed and delivered the deed in question to defendant, with the intention that he should have the farm.   That it was the fixed intention and purpose of Hiram Hickman that the defendant should have the farm, is evidenced by his every act and word, in that regard, for almost five years prior to his death.   There is not an intimation in the record of any sort, much less evidence, that he ever had any other thought in his mind from the day he was paralyzed, August 21, 1899, until he died, July 6, 1904. The facts are conclusive that it was the intention of the

grantor to give the farm to defendant. The law is well settled in this jurisdiction that the intention of the grantor is the fact to be established; and that the courts seek diligently for the intention of the maker of the instrument. The delivery of a deed so far as the grantor is concerned is a matter of intention, and where the intention clearly appears, the act in pursuance thereof will be construed to constitute a delivery. The law presumes much more in favor of a delivery of a deed in case of voluntary settlements in favor of a relative than it does in ordinary cases of bargain and sale between strangers. Illustrations and applications of the principles here announced may be found in the following cases: Coulson v. Coulson, 180 Mo. 709; White v. Pollock, 117 Mo. 467; Rumsey v. Otis, 133 Mo. 85; Hamilton v. Armstrong, 120 Mo. 597; Standiford v. Standiford, 97 Mo. 231; Sneathen v. Sneathen, 104 Mo. 201; Crowder v. Searcy, 103 Mo. 97; Burke v. Adams, 80 Mo. 504; Appleman v. Appleman, 140 Mo. 309; Hall v. Hall, 107 Mo. 101; McNear v. Williamson, 166 Mo. 358; Griffin v. McIntosh, 176 Mo. 392; Powell v. Banks, 146 Mo. 620; Allen v. De-Groodt, 105 Mo. 442; Rothenbarger v. Rothenbarger, 111 Mo. 10; Kingman & Co. v. Buggy Co., 150 Mo. 310.

*F. H. McCullough, G. R. Balthrope* and *J. W. Ennis* for respondents.

(1) The contention of appellant, that "the judgment is not responsive to the issues made by the pleadings in the cause," made in the first subdivision of appellant's brief, is not well taken. Sec. 650, R. S. 1899; Graton v. Land & Lumber Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 709; Roden v. Helm, 192 Mo. 71. (2) To operate as a complete and effectual conveyance of land, a delivery of the deed, actual or constructive, by the grantor and an acceptance by the grantee, or by some one for him, are essential requisites.

These are the final and crowning acts in the conveyance, without which all other formalities are ineffectual. The grantor must part with the deed and all right of dominion over it, intending that it shall operate as a conveyance, and the grantee must accept it. Standiford v. Standiford, 97 Mo. 238; Huey v. Huey, 65 Mo. 689; Taylor v. Davis, 72 Mo. 291; 2 Greenleaf on Evidence, sec. 297; Tyler v. Hall, 106 Mo. 313; Hall v. Hall, 107 Mo. 107; Bunn v. Stuart, 183 Mo. 383; McNear v. Williamson, 166 Mo. 367; Mudd v. Dillon, 166 Mo. 119. The courts look to the intention of the grantor, as to the delivery of the deed, and not to the intention of the grantor, as to the disposition of the property. Peters v. Berkemeier, 184 Mo. 402; Coulson v. Coulson, 180 Mo. 709; Hamilton v. Armstrong, 120 Mo. 597; White v. Pollock, 117 Mo. 467; Sneathen v. Sneathen, 104 Mo. 201; Rumsey v. Otis, 133 Mo. 85; Crowder v. Searcy, 103 Mo. 97; Burk v. Adams, 80 Mo. 504; Appleman v. Appleman, 140 Mo. 309. The question of the delivery of a deed is a mixed question of law and fact, and such delivery is complete only when the grantor has parted with his dominion over the deed. Powell v. Banks, 146 Mo. 620. The trial court clearly had the right to make any finding on the question of fact as to the second and third delivery of the pretended deed in this case that to him might seem proper and just, and where the evidence consists of oral testimony, the trial court's finding of facts will be greatly deferred to, on account of the superior advantages possessed by the trial court for weighing the evidence and judging as to the credibility of the witnesses. Tinker v. Kier, 195 Mo. 204; Carter v. Dilley, 167 Mo. 571; Dunnivan v. Dunnivan, 157 Mo. 160; Hartley v. Hartley, 143 Mo. 216; Mathias v. O'Neill, 94 Mo. 520; Loring v. Atterbury, 138 Mo. 262; Shanklin v. McCracken, 151 Mo. 587; Parker v. Roberts, 116 Mo. 667; Chouteau v. Allen, 70 Mo. 336. (3) This is an action at law, and no

instructions or declarations of law being asked or given, and no questions of law being presented in the record, and the testimony being conflicting, the findings of the trial court cannot be reviewed. Moberly v. Trenton, 181 Mo. 647.

## MINORITY OPINION.

WOODSON, J:—This suit originated in the circuit court of Knox county, and was instituted by the plaintiffs against the defendant, seeking to determine the interests of the parties and quiet the title to certain lands, described in the petition, as is provided for by section 650, Revised Statutes 1899.

The contention of defendant being that the judgment is not responsive to the issues made by the pleadings, and questions being presented in respect to the introduction of evidence thereunder, it will be necessary to set them out in full.

Omitting the formal parts, the petition is as follows:

"Plaintiffs state that Hiram Hickman departed this life at the county of Knox and State of Missouri on the — day of ——, 1904, the owner in fee simple of the following described lands in county of Knox and State of Missouri, to-wit:

"The east half of the southwest quarter of section twenty-six, and thirty-five acres lying in the east part of the west half of the southwest quarter of section twenty-six, and thirty-two acres more or less, being all of the northwest fourth of the southeast quarter of section twenty-six, except eight acres in the northeast corner thereof heretofore conveyed by Hiram Hickman, in small tracts, by deeds, to Isaac H. Pigeon, Thomas A. Howerton, the Trustees of the Christian Church, P. A. Creason, William Pence and Samuel H. Varner, respectively. All of said land being in township sixty,

range eleven west, and containing one hundred and forty-seven acres, more or less.

"That he so departed this life, intestate, leaving as his sole heirs at law these plaintiffs, who are each entitled to an undivided interest in said lands as follows:

"William A. Burk is entitled to one-sixteenth, as evidenced by deed from Lafay Hunt; Mary E. Burk is entitled to one-sixteenth; Willard Walker is entitled to one-sixteenth; Michael B. Hickman, Eliza E. Applegate, Henry B. Hickman, William J. Hickman, Laura B. Hickman, Hattie M. King, Rolly V. Hickman and M. Guy Hickman are each entitled to one thirty-second of said land; William Pence is entitled to one forty-eighth interest in said land; Sarah Newman is entitled to one-fourth of said land; and the defendant, James Pence, who is entitled to an undivided one forty-eighth interest in said land, and the following named persons who are not made parties hereto: Olive Hunt, who is entitled to one-sixteenth thereof, and Pinkie Hagar, Mollie Vanosdol, Ella Rice, Eliza Pence, John Pence, Frank Pence, Henry Pence, Jacob Pence, Wesley Pence and Albert Pence, who are each entitled to an undivided one forty-eighth interest in said land, but make no claim thereto.

"That since the death of said Hiram Hickman, as aforesaid, the defendant has taken possession of all said lands, claiming to be the owner in fee simple of all of the same, and now holds the possession adversely to these plaintiffs, and adversely to their interests as aforesaid, the precise nature, claim and title under which defendant so claims said land being unknown to these plaintiffs.

"Wherefore, plaintiffs pray that the court ascertain and determine the estate, title and interest of the parties plaintiff and defendant, respectively, in and to said land above described and to define and adjudge

by its judgment or decree the title, estate and interest of the parties severally, in and to the real property aforesaid, and for such other orders, judgments and decrees as to the court may seem just and proper in the premises.''

The answer is as follows:

''Now comes the defendant and by leave of court files his amended answer to the petition of the plaintiffs in the above-entitled cause and for such amended answer says:

''First. Defendant admits that Hiram Hickman died intestate in Knox county, Missouri, in the month of July, 1904; but defendant denies that said Hickman died the owner in fee simple of the land described in the petition.

''Second. Defendant admits that he is in the possession of all the lands described in the petition; admits that he claims to be the owner in fee simple of all said lands; admits that he now holds the possession thereof adversely to the plaintiffs.

''Third. Defendant denies that the said Hiram Hickman departed this life leaving as his sole heirs at law the plaintiffs herein; denies that the plaintiffs are each entitled to an undivided interest in said land, as set out and stated in the petition; denies that the plaintiffs, or either of them, are entitled to any interest whatever in the lands described in the petition.

''Defendant further answering the plaintiffs' petition herein, avers and charges the facts to be, that he is the sole owner in fee simple of all the lands described in the petition, and that he is in the lawful possession of all said land, holding title thereto, and the possession thereof adversely to the plaintiffs and to all the world.

''Defendant further answering says that his title to the lands described in plaintiffs' petition is evidenced by a good and sufficient deed, made, executed

206 Sup—21

and delivered by the said Hiram Hickman, in his lifetime, to the defendant, conveying all said lands to this defendant, James Pence, which deed is recorded in book 62 at page 262, deed records of Knox county, Missouri.

"And now the defendant having fully answered asks to be discharged with his costs."

The reply is as follows:

"Now come the plaintiffs herein by their attorneys of record, and by leave of court file their reply to the defendant's amended answer in the above-entitled cause, and for such reply plaintiffs say:

"First. They deny that defendant is the sole owner in fee simple of all the lands described in the petition and deny that he is in the lawful possession of all said lands, holding the title thereto and the possession thereof adversely to the plaintiffs and to all the world.

"Second. Plaintiffs admit that defendant is claiming title to all of said lands described in plaintiffs' petition, under and by virtue of a certain pretended deed, claimed to have been executed by said Hiram Hickman in his lifetime, which pretended deed is recorded in book 62 at page 262, deed records of Knox county, Missouri, but plaintiffs deny that said deed is a good and sufficient deed; deny that said deed was made, executed and delivered by said Hiram Hickman in his lifetime to the defendant; and plaintiffs say, that as to whether said Hiram Hickman signed said pretended deed they have not knowledge or information thereof sufficient to form a belief, but plaintiffs say, aver and charge it to be a fact that said pretended deed was never delivered to the defendant and that the same was obtained by the defendant through fraud, covin and deception practiced by the defendant upon said Hiram Hickman.

"That at the time said pretended deed is claimed by defendant to have been made and executed by said

Hiram Hickman, he, the said Hiram Hickman, was incapacitated on account of the imbecility of his mind to make and execute the same, he, at the time and for a long time prior thereto, being old and paralyzed, in both mind and body, to such an extent as to prevent him, said Hiram, from knowing or understanding the nature of said pretended deed or the nature and character of the property therein attempted to be conveyed, or the object of his bounty therein attempted to be declared.

"Plaintiffs, further replying, charge it to be a fact, that if said Hiram Hickman signed said deed, it was on account of the fraudulent solicitations and undue influence of the defendant exerted over said Hiram Hickman at the time, he, the said Hickman, was in such imbecile condition of mind on account of such disease of paralysis and old age as aforesaid. Wherefore, these plaintiffs say that said pretended deed is not the act and deed of said Hiram Hickman, but the fraudulent act and deed of the defendant, procured for the purpose of cheating and defrauding these plaintiffs and other heirs of said Hiram Hickman, deceased, out of said lands.

"Further replying, plaintiffs state that said pretended deed, so claimed by the defendant as having been executed by said Hiram Hickman, was without consideration.

"Plaintiffs, further replying, say, that at the date said pretended deed is claimed by defendant to have been executed by said Hiram Hickman, said land was of the value of eight thousand dollars, and said pretended deed was never stamped with an United States War Revenue stamp or stamps and said stamp or stamps canceled as provided by the Revenue Laws of the United States, being an Act of Congress entitled, 'An Act to Provide Ways and Means to Meet War Expenditure and For Other Purposes,' approved June 13,

1898. Wherefore, plaintiffs say that under and by virtue of said Act of Congress, said pretended deed is void and cannot be used in evidence in this cause.

"Having fully replied, plaintiffs ask judgment as prayed for in their petition."

The case was tried by the court without a jury.

At the outset of the trial, after the pleadings were read, counsel for defendant, appellant here, made the following objection to the introduction of any evidence in the cause:

"The pleadings having been read to the court, the defendant now objects to the introduction of any evidence on the part of the plaintiffs under their petition, because it is disclosed by the answer of the defendant that the defendant claims title under a deed duly made, executed and delivered by said Hiram Hickman in his lifetime to the defendant, and the reply admits the execution of said deed but seeks to avoid it by pleading in the reply that the said Hickman was mentally incapacitated to make such a deed.

"And, second, that said deed was procured by undue influence and fraud of the defendant exercised upon the mind of said Hickman.

"And, third, there was no internal revenue stamp placed upon said deed."

The objections were, by the court, overruled, and defendant duly excepted.

On the trial it was agreed that Hiram Hickman was the common source of title; that the heirship of plaintiffs to said Hickman was correctly stated in the petition; and that Lafayette Hunt conveyed his interest in the land to William Burk prior to the institution of this suit.

Plaintiffs rested their case upon that agreement. Defendant asked and the court refused a demurrer to the evidence, to which action of the court an exception was duly saved.

The defendant then introduced evidence, substantially, as follows:

That Hiram Hickman, the grantor in the deed in question, was about eighty years of age at the time of his death, which occurred on July 6, 1904. He was a widower and had no children. His heirs at law were one sister and a number of nephews and nieces, the parties named in the petition. During the ten or twelve years just prior to his death, he and defendant had lived together on the farm in question, in Knox county, with the exception of one or two years, about 1899 and 1900, when he lived with his sister in Shelbina, Missouri.

He was a man of more than ordinary strength of character and mind, and generally had his own way about matters in which he was interested. In August, 1899, he went on a visit to his sister, Mrs. Newman, who was living at Shelbina, Missouri. While there, on August 21, 1899, he had a stroke of paralysis, which resulted in the loss of the use of his lower limbs. Two or three days after this affliction he made a will by which he devised the land in controversy to the defendant. The will was written by R. L. Thomas, a business man of Shelbina, and was left with said Thomas to hold. In regard to its execution, Mr. Thomas testified, in substance, as follows:

Am in the real estate and insurance business, and was acquainted with Hiram Hickman. In the month of August, 1899, he was called to write his will, and did so, and kept it in his possession until he was requested by letter to send it to Hickman, which he did. He willed all his property to James Pence, the defendant. Hickman told witness to write the will, and dictated it as he wrote it. No one was in the room with us while it was being written. The will disposed of all his real estate to defendant, which was located near Plevna, Knox county, Missouri. He signed the will and it was

duly witnessed. Hickman, from memory, gave witness the description of the land. His mind was clear and he understood what he was doing. Pence, the defendant, went after witness to come and write the will at the request of Hickman, and paid him $2.50 for writing it. Witness did not know what became of the will after he sent it to Hickman.

Hickman returned to Plevna from Shelbina on May 20, 1900, and from that time until his death he lived on the farm in question with defendant and his family.

On August 27, 1900, he executed the deed in question to defendant, which was at the residence then occupied by him and Pence. The deed was written by Squire William A. Elliott. It was, at the time of its execution, delivered by Hickman to T. N. Padgett, a merchant of Plevna, to hold.

Squire Elliott testified, in substance, as follows:

I live near Plevna, in the Hickman neighborhood. Was acquainted with Hickman. I wrote the deed in question at the request of Mr. Hickman, and he gave me the description of the land, without referring to any memorandum. I saw him sign the deed, and I took his acknowledgment to it. No one was present at the time except myself and T. N. Padgett. The deed was made to James Pence.

"Q. Then what was done with the deed? A. (He) passed it over I think, shoved it upon the table to Mr. Padgett and told him to keep that and give it to Mr. Pence at his death if he never called for it. I don't know the exact words, but that is the import of it."

Mr. Padgett took the deed and carried it away with him. I suppose Hickman was perfectly at himself. His mind and understanding were perfectly clear. He knew what property he owned and what disposition he was making of it.

T. N. Padgett testified in substance: Reside at

Plevna. Have known Hickman for about twenty-three years. Was present at the execution of the deed. Wm. Elliott wrote it, and Hickman gave him the description of the property, without any paper to refresh his memory from. He signed and acknowledged the deed.

"Q. Now then, when he made, signed and acknowledged that deed what did he do with it? A. Why, he shoved it over to me, setting at the table—he was at the corner, Squire was at the other corner, and I in the middle—he shoved it over to me and he told me to take the deed and keep it for him if he didn't call for it, when he was gone to give it to James Pence and see it was recorded. I took it and kept it at my place of business."

During the trial the witness was asked the following questions:

"Q. I will ask you if there ever was another delivery of this deed. Did you deliver this deed back to Hiram Hickman? Did Mr. Hickman ever call for this deed back? A. Yes, sir; he called for it back, and I took it down and gave it to him.

"Q. Then what did he do with the deed? A. He gave it back to me and told me to take the deed and when he was dead to deliver it to James Pence."

That was in June, 1902. Pence was not present when the deed was delivered to me the second time, but he knew I was holding the deed and the conditions I was holding it under. On June 16, 1904, Hickman asked me to let him see the deed and he said Dr. McGee "told him his health was affected and he had dropsy and he had made up his mind to deliver that deed to James Pence himself," and I said, all right if it was satisfactory to Pence, which was on June 16th, and on the next day I went down to his house and took the deed and "I told Uncle Hi, I got that deed and he told me to tell Jim to come into the room." All right. "I called Jim in," he was in the other room. I tore open the en-

velope and handed it to Uncle Hi, "here it is." He looked at the deed and says, "Yes." He examined it and looked at it and says, "That's the deed," and delivered it to James Pence. He says, "James, here is the deed to my farm.. I can't be with you much longer, take it and take care of the farm, this is yours," he says. He also delivered to Pence a note at the same time. His mind was in good condition and he knew what he was doing. This was on June 17th, and he died July 6th following, in 1904.

On the direct examination of Mr. Padgett, the court refused to permit the witness to testify that Mr. Hickman, about two years after the execution of the deed, had requested him and the defendant to come to Edina, and consult C. D. Stewart, an attorney, about the delivery of the deed. But on cross-examination of this witness it was shown that they did come to Edina for that purpose, and did consult Judge Stewart about the delivery of the deed; that when witness went back to Hickman's home that same day he immediately repeated to Hickman what Stewart had told him about how the deed should be delivered; and that Mr. Hickman then said to Padgett: "You fetch the deed down tomorrow and I will deliver it so it will stick." That the following morning Padgett took the deed down and gave it to Hickman, who after first examining it immediately redelivered it to Padgett with instructions to deliver it to the defendant, upon his death. This, the witness says, was in June, 1902.

Judge Stewart testified that he remembered the circumstance of Padgett coming and consulting with him as an attorney, about the delivery of a deed. He said he could not be positive whether Pence was present at the conference or not, he might have been; that Padgett and Pence had been at his office at different times together; that he remembered more distinctly about

Padgett, because he did the talking; that he stated a supposed case of a transfer of property by delivering the deed into the hands of a third party, but he did not mention the name of the grantor or grantee in such deed. Judge Stewart in that connection said: "I stated to Mr. Padgett at that time that a deed placed in the hands of third parties to be there in the management and control of the grantor to be delivered according to his directions after his death to the grantee would not deliver the title, I do not remember just how it transpired." I understanding him to ask me the question—

"By the Court: Was that before or after the death of this old gentleman? A. Why, it was evidently before his death, it has been several years ago.

"Q. I don't think it was over about two years ago? A. I couldn't state, I just recollect it has been some time ago, some length of time, I couldn't state the time I was giving him advice."

Dr. McGee testified: That he visited Mr. Hickman professionally on the 9th, 18th and 20th of June, 1904. That he told Hickman on June 9, 1904, he had but a short time to live on account of the progress of the disease with which he was afflicted; and to settle up his business. He testified that Mr. Hickman had been paralyzed in his lower limbs and was moved around in a wheel chair; he was also afflicted at that time with dropsy of the abdomen, which caused him heart trouble. He said his mind was clear and all right on the occasion of these visits.

The deed in question is an ordinary general warranty deed, in usual form, and, in consideration of one dollar, it conveys the land in controversy to defendant, and is duly executed.

After the signature of Hiram Hickman are the words, "Signed, sealed and delivered in presence of Wm. A. Elliott, T. N. Padgett," with the word "deliv-

ered" erased by having pen marks drawn through it.

Several neighbors of Hickman testified they had known him for years; that he had lived with defendant and wife for ten or twelve years, and he was well cared for by them, and he was well pleased with their treatment. Those neighbors also testified that he was a man of strong mind and will-power, and his disposition was to have his own way about things in which he was interested; that he was capable of attending to his own affairs, and did it, and paid but little attention to the business of other people; that his mind remained bright and clear up to his death. The evidence showed that upon four or five different occasions he made such statements as the following to his neighbors: "I expect Jim Pence to have my farm;" "My intention is for Jim Pence to have my farm."

Defendant rested his case.

Plaintiff's evidence tended to show that at the time of the execution of the deed Hickman caused the word "delivered" in the attesting clause of the deed to be stricken out; that T. N. Padgett retained possession of the deed from the date of its execution until two days after the death of Hickman; that on the last-named date he took said deed to Edina and filed it for record with the recorder of deeds and paid the recording fee to the recorder, which was all on July 8, 1904; that Hickman had been stricken with paralysis, and had lost the use of his lower limbs, and he had to be wheeled around in an invalid's chair; that at the time he executed the deed he was seventy-five or eighty years of age, and lived in his own house on his own farm; that T. N. Padgett and defendant were brothers-in-law; that said Padgett at the time of the execution of the deed was acting as the confidential adviser of both Pence and Hickman; that for a year or more before Hickman's death Padgett owed Hickman a note of $675 secured by deed of trust upon his store building in

Plevna; that Pence was the assignee of said note, and canceled it and had the deed of trust securing it released of record on the 8th day of July, 1904, and took a new note from Padgett, without security therefor, which had not been paid at the time of the trial of this case. Padgett testified he was worth six thousand dollars or seven thousand dollars, besides the store building, at the time he gave the new note.

Plaintiffs also introduced evidence which showed the deed in question had never been stamped, as required by the United States internal revenue laws, and their evidence tended to show Hickman retained the active control of the farm in so far as his health would permit, down to his death. Their evidence also tended to show that Hickman was stricken with paralysis on August 21, 1899, and that he became unconscious and remained in that condition of body and mind for several weeks, and that Padgett told two or three witnesses that he retained the deed, and never delivered it to any one until he filed it with the recorder of deeds for record, on July 8, 1904.

Upon this state of the pleadings and the evidence, the court found the issues for the plaintiffs, set aside the deed from Hickman to Pence, the defendant, and rendered judgment as prayed for.

In due time defendant filed his motions for a new trial and in arrest of judgment, which were, by the court, overruled, and to that action of the court the defendant duly excepted, and has appealed the cause to this court for review.

I. The appellant assigns numerous errors committed by the circuit court during the progress of the trial; but, from the view we take of the case, it will only be necessary to consider the following, in order to make a proper disposition thereof:

"First. That the judgment rendered in the cause

is not responsive to the issues made by the pleadings.

"Second. That the action of the court in refusing defendant's demurrer to the evidence was error.

"Third. That the court erred in admitting evidence over the objections of the defendant.

"Fourth. That the court erred in finding that the deed was not delivered, and in adjudging the deed to be null and void."

We will take up and dispose of the assignments in the order in which they are presented.

The first contention of the appellant is, that the judgment is not responsive to the pleadings.

The plaintiffs claim in their petition that Hiram Hickman departed this life, intestate, owning the land in controversy, and that they and the defendant were his heirs at law, and, as such, they owned thirty-four forty-eighths of it, and defendant and certain other parties, who were not made parties to the suit, owned the remainder. The petition further states that defendant had entered upon and taken possession of all the land and was claiming to be the owner of the entire tract, and prayed the court to ascertain and determine the estate, title and interest of the parties, plaintiffs and defendant, respectively.

The answer was a general denial and a claim of title to the land through and by virtue of a general warranty deed executed by Hickman to him, dated the 27th day of August, 1900.

The reply was a denial of the new matter stated in the answer, and an allegation that defendant obtained the deed mentioned in the answer by fraud and undue influence, and that said deed was never delivered to the defendant.

Section 592, Revised Statutes 1899, provides that the petition shall contain a plain and concise statement of the facts constituting the cause of action, without

unnecessary repetition.   This statute is mandatory, and its mandate must be obeyed.   Plaintiffs cannot plead one cause of action and recover upon another. [Clements v. Yeates, 69 Mo. 623; Weil v. Posten, 77 Mo: 284; Reed v. Bott, 100 Mo. 62; Huston v. Tyler, 140 Mo. 264.]

According to this rule, plaintiffs were confined to the facts stated in the petition, and could not prove any facts not contained therein.   The petition does not allege that defendant procured the execution of the deed by fraud and undue influence, nor that the deed was never delivered in the lifetime of Hickman.   These facts are alleged in plaintiffs' reply to the answer, and it asks the court to find those facts to be true, and to cancel the deed and hold it for naught, and that the defendant be forever barred from claiming any interest in and to the lands described in the petition by virtue of said deed.

The plaintiffs not only alleged those facts in the reply, but they also introduced evidence tending to prove their truthfulness, and the court found them to be true, and adjudged the deed to be void and of no force or effect, because it was not delivered.   Not only this, the plaintiffs could not have recovered in this case without, first, having the deed set aside and nullified. From this it will be seen that only a portion of plaintiffs' cause of action is stated in the petition, and a portion is stated in the reply.   The petition alleged the death, ownership and intestacy of Hickman, and the heirship of plaintiffs, and the reply alleges the fraud and undue influence the defendant exercised over the mind of Hickman in procuring the execution of the deed, and the non-delivery of the deed during the lifetime of Hickman.   The two statements taken together constitute the cause of action upon which plaintiffs recovered, and upon which the judgment is based. Neither standing alone stated facts sufficient to consti-

tute the cause of action against the defendant, and upon which plaintiffs recovered.

Counsel for plaintiffs do not seriously controvert the correctness of the conclusions here reached, but they seek to escape therefrom by invoking the well-known doctrine that when an issue is first raised by the answer and denied by the reply it gives the court jurisdiction thereof and accomplishes all that could have been done by amendment of the petition, and cite the following authorities in support of their position: Stivers v. Horne, 62 Mo. 475; Garth v. Caldwell, 72 Mo. 629; Wagner v. Railroad, 97 Mo. 520; Ricketts v. Hart, 150 Mo. 73, 74, 75.

These decisions are based upon the statutes of jeofails and amendments, which are substantially the same as sections 659, 660, 672 and 673, Revised Statutes 1899, and which prevent such irregularities from being raised after trial and judgment.

Judge BRACE said, in the case of Wagner v. Railroad, supra: "But as the defendant did not see proper to raise the objection before the trial, but in its answer tendered the issue 'that he was not a passenger on its train and that it did not owe him the duty of a passenger,' which issue the plaintiff accepted, and joined, and both parties went to trial upon it, that objection was waived and afforded no ground for a new trial, and cannot be considered on writ of error." This language of BRACE, J., is quoted with approval in the case of Ricketts v. Hart, supra.

In the case at bar, timely objections were made and preserved. The record discloses that the defendant objected to the introduction of any evidence in the cause, because of the defective condition of the petition, and, at the close of the introduction of plaintiffs' evidence in chief, the same objection was renewed by defendant, asking an instruction in the nature of a demurrer to the evidence.

In the case at bar there was no waiver of the defective petition, as was the fact in the cases last cited and relied upon by plaintiffs.

The exact question was presented to this court in the case of Milliken v. Thyson Commission Co., 202 Mo. 637. There the petition declared upon a contract to pay commissions for the purchase and sale of certain wheat for defendant. The answer was a general denial, and a special plea, stating the contract as the defendant understood it to be, which was materially different from the contract stated in the petition. The reply practically abandoned the petition, and accepted the contract as stated in the answer. At the trial the plaintiff offered in evidence certain portions of defendant's answer to prove the contract between them. To that offer defendant objected, because it did not tend to prove the contract stated in the petition, but was at variance therefrom, which was overruled by the court. In passing on that point this court said: "The transactions stated in the petition are totally different from those stated in the answer and introduced in evidence by the respondent. It is also a well-established rule of pleading that a party cannot state one cause of action and recover on a different one." The plaintiff must recover, if at all, upon the cause of action stated in the petition and not one stated in the answer or reply. [Weil v. Posten, 77 Mo. 287; Reed v. Bott, 100 Mo. 66; Leslie v. Railroad, 88 Mo. 54.]

From the record in the case it is thus seen that the judgment rendered is not based upon the cause of action stated in the petition, but upon a cause of action, a portion of which is stated therein and the remainder is stated in the reply. For the reason stated, the judgment rendered in this cause is erroneous and not responsive to the issues made. [Roden v. Helm, 192 Mo. 93-94; Schneider v. Patton, 175 Mo. 723; Ross v. Ross, 81 Mo. 84.]

II. The second assignment of error presented by the appellant is the action of the court in refusing to give an instruction asked at the close of plaintiffs' testimony in chief in the nature of a demurrer to the evidence.

If what has been stated in paragraph one of this opinion regarding that rule of pleading which requires the plaintiff to state his entire cause of action in the petition is a correct statement of the law, then it must necessarily follow as a sequence of that rule that the plaintiff in proving his case must confine his testimony to the allegations of the petition and the cause of action stated therein. He has no more right to prove a cause of action not stated in the petition and recover upon it, than he has to allege one cause of action in the petition and recover upon one not stated therein. The evidence which plaintiffs introduced, and which tended to prove the exercise of undue influence on the part of the defendant over the mind of Hiram Hickman, in the procurement of the deed, and the evidence which tended to show that deed was never delivered to defendant until after the death of Hickman, was not directed to any fact stated in the petition, nor does it correspond to the allegations of the petition.

This was a clear departure between the evidence introduced and allegations of the petition. The demurrer should have been given. [Jones v. Louderman, 39 Mo. 287; Sumner v. Rogers, 90 Mo. 324; Haynes v. Town of Trenton, 108 Mo. 123; Yarnell v. Railroad, 113 Mo. 570; Standard Milling Co. v. Railroad, 122 Mo. 277.]

III. The third contention is that the court erred in admitting any evidence whatever under the pleadings, because the petition does not state facts sufficient to constitute a cause of action. Technically speaking

this is not true. The petition does state facts sufficient
to constitue a cause of action; but it does not state the
cause of action plaintiffs were permitted to recover
upon in this case. If Hickman had not conveyed the
land to defendant prior to his death, then the title would
have descended to his heirs at law, and the court
could have ascertained and determined the interests
and estates of all the heirs to the land in controversy.
[Graton v. Land & Lumber Co., 189 Mo. 322; Gage v.
Cantwell, 191 Mo. 706.]

For the reason stated, the court did not commit
error in overruling the objection to the introduction of
all evidence in the case, but it did err in admitting
the evidence which was introduced for the purpose of
proving the new matter stated in plaintiffs' reply. See
authorities cited under paragraph two of this opinion.

IV.   The last insistence of appellant is, that the
court erred in finding that the deed from Hiram Hick-
man to James Pence, the defendant, dated August 27,
1900, had never been delivered in the lifetime of said
Hickman, and that the deed was null and void on that
account.

We think that action of the court was erroneous
for two reasons:

First.   Because of the erroneous condition in
which the pleadings were, at the time of the trial, no
such issue was presented to the court for its determina-
tion; and

Second.   Because the effect of the defective condi-
tion of the pleadings was to cast the burden upon de-
fendant to allege and prove the validity of the deed
executed by Hickman to him.

The deed was regular upon its face, and had been
signed, sealed, acknowledged and recorded before the
institution of this suit. In this class of actions the
burden of proof rests upon the plaintiffs to show the

206 Sup—22

deed to defendant was void. [Graton v. Land & Lumber Co., 189 Mo. 322; Spore v. Land Co., 186 Mo. 656; Gillingham v. Brown, 187 Mo. 181; Gage v. Cantwell, 191 Mo. 698.]

For the reasons stated, the judgment is reversed and the cause remanded for another trial.

The other judges dissent, and express their views in a separate opinion in which I concur, except as to the question of pleading.

## MAJORITY OPINION.

VALLIANT, P. J.—I concur in the conclusion that this judgment should be reversed and I think it should be with directions to the circuit court to enter judgment for the defendant. The proof is conclusive that the deed was delivered and the evidence does not sustain the charge that there was any undue influence exercised, or that the grantor in the deed was not possessed of sufficient mental capacity to execute it.

But I do not construe the pleadings as my learned brother who wrote the opinion in this case does. The petition states a good cause of action and if the proof had sustained it, or rather if the proof had not sustained the affirmative defense stated in the answer, plaintiffs would have been entitled to a decree on the facts stated in their petition, that is, that Hickman owned the land at the time of his death, that he died intestate and the plaintiffs and defendant were his heirs at law. But the answer was in the nature of a plea of confession and avoidance; it admits that Hickman owned the land in his lifetime, that he died intestate and that the plaintiffs and defendant are his heirs at law, but it says that Hickman in his lifetime executed a deed conveying the land to defendant and that defendant now owns the land under that deed. In their reply the plaintiffs deny that Hickman executed the alleged deed, aver that

it was never delivered, and further that Hickman had not mental capacity to execute a deed and that this pretended deed was obtained by undue influence. Defendant's answer, confessing as it does all the facts stated in the petition except the fact that Hickman owned the land at the time of his death, and pleading affirmatively the execution of the deed under which defendant claimed, put the case in this condition, to-wit, that plaintiffs were entitled to a decree adjudging that the land belonged to them and the defendant in the proportions stated, unless the defendant made good his plea establishing his deed. The burden of proof of the due execution of the deed was on the defendant; an essential fact in the execution of the deed is the delivery; it therefore devolved on the defendant to prove the delivery as well as the signing of the deed. At common law the defendant in such case would have had to prove the fact of signing and the fact of delivering the deed. Our statute does not relieve the defendant of the burden of proving the execution of the deed, but it does make a certain fact prima-facie evidence of the due execution of the deed, and to that extent lightens in the first instance his burden. Section 932, Revised Statutes 1899, is: "Every instrument in writing, conveying or affecting deal estate, which shall be acknowledged or proved, and certified as hereinbefore prescribed, may, together with the certificates of acknowledgment or proof, and relinquishment, be read in evidence, without further proof." That is to say, the certificate of acknowledgment shall take the place of the evidence that would otherwise be required of the defendant going to show that the deed was signed and delivered; the certificate of acknowledgment is prima-facie evidence that the deed was duly executed, that is, that it was signed and delivered, and on that prima-facie showing without other proof the defendant may read the deed in evidence. But it is not conclusive evi-

dence and the plaintiffs may assail it by proof to the contrary, and this they may do under their general denial of due execution of the deed, and if they introduce evidence tending to overcome the defendant's prima-facie case made by the certificate of acknowledgment the defendant may fortify his prima-facie case, if he can, by other proof of the signing and the delivery. On the trial in this case the introduction of evidence did not take exactly that order, but all the evidence went in, the deed with the certificate of acknowledgment, the plaintiffs' proof assailing the alleged delivery and the defendant's proof fortifying his prima-facie case, and in my opinion the evidence fully sustained the defendant's plea that the deed was duly delivered.

On the issue tendered in the reply, that the deed was procured by fraud or that the grantor was not of mental capacity to make a deed, the burden of proof was on the plaintiffs and the proof did not sustain the charge.

But that charge in the reply was no part of the plaintiffs' case in chief, it was their answer to the defendant's affirmative plea of confession and avoidance, and if the proof had sustained it, it would have destroyed the alleged title set up in defendant's answer and have left the plaintiffs clear to a decree on their title stated in their petition.

In my opinion the judgment should be reversed and the cause remanded with directions to enter judgment for the defendant sustaining the title stated in his answer. *Lamm* and *Graves, JJ.,* concur in these views; *Woodson, J.,* concurs except as to the interpretation of the pleadings. It is therefore ordered that the judgment be reversed and the cause remanded with directions to enter judgment for the defendant.