LAURA A. BRYANT Appellant and Respondent, v. ETTIE L. SHINNABARGER et al., Respondents and Appellants. ,

Division Two, December 15, 1920.

1. **CONVEYANCE: Mental Capacity: Inconsistent Acts.** The contemporaneous execution of a deed and of a power of attorney, by which the maker gave to the grantee complete dominion over the property, do not comport with that average intelligence which should be manifest in the making of solemn instruments.

2. ——: ——: ——: **Different Signatures.** It is almost universal knowledge that aged persons sign their names in a uniform manner. It is a minor matter, but worthy of notice, in determining the grantor's mental capacity, that she signed her name to a deed "Elizabeth L. Glebb" and within a half hour or so thereafter signed it to a power of attorney "Mrs. E. L. Glebb," on both occasions before the same notary public.

3. ——: ——: **Execution Shortly Before Death.** Ordinarily a difference of one day between the execution of a deed as shown by the notary's certificate, and its execution as shown by the testimony, where no question of priority is involved, will constitute only a fragile reason for questioning its authenticity. But where the grantor may be said to have been in the throes of death it matters much, as determinative of her mental capacity, whether it was executed 24 or 48 hours before her death.

4. ——: ——: **Contradictory Testimony: Deference to Chancellor.** Where the witnesses who were present at the time of the execution of the deed by the aged grantor, who had for sometime been afflicted with severe kidney disease and was then an extreme sufferer, testified unequivocally to her mental soundness and her under-

standing of the transaction at that particular time, and a disinterested physician, called for the first time very shortly afterwards to treat her, testified that she did not know much about what she was saying or doing and did not have sufficient mental capacity to make a deed or to know the natural objects of her bounty or what property she owned, the appellate court will defer to the finding of the trial chancellor, who had a superior opportunity of seeing and hearing the witnesses and weighing their testimony.

5. ———: ———: **Reformation.** If the grantor was mentally able to make a deed it follows, in the absence of any convincing proof to the contrary, that she knew what property she was conveying, that it was correctly described in the deed and comprised what she intended to give to the grantee, and that therefore said deed cannot be reformed to include other lands.

6. ———: **Inequitable.** In determining whether a conveyance by an aged woman to another by whom she, in her severe sickness, was being cared for, was inequitable, the nature of the property so conveyed should be compared with that which went by inheritance to the grantor's natural heirs.

7. **EVIDENCE: On Appeal in Equity Suit.** Error in the admission of testimony by the trial chancellor in an equity suit is immaterial on appeal, for if the testimony was incompetent it will be disregarded by the appellate court and such judgment rendered as in equity and good conscience the pleadings and relevant testimony authorize.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*A. D. Gresham* and *James H. Hull* for plaintiff.

(1) The court committed error in not finding for plaintiff on her first count in the petition, as the evidence is all to the effect that the parties to the deed made a mutual mistake in the description contained in the deed. Parker v. Vanhoozer, 142 Mo. 621; Dougherty v. Dougherty, 204 Mo. 237; Brinkerhoff v. Juden, 255 Mo. 715; Crouch v. Thompson, 254 Mo. 486; Robinson v. Korns, 250 Mo. 674. (2) It is true as contended by counsel for defendants, that the law ordinarily requires

a higher degree of mentality to execute a deed than it does to make a will. The reason for the distinction is that in the case of a deed ordinarily the contract evidenced thereby is of a dual character, but in this case that difference is of no practical importance for the reason that the deed was intended as a gift in consideration of love and affection, a meritorious consideration, a recognized obligation for favors and kindness rendered by plaintiff to her aunt, Mrs. Glebb. Jones v. Thomas, 218 Mo. 538; Chadwell v. Reed, 198 Mo. 359; Richardson v. Smart, 152 Mo. 623. (3) The burden is on the defendants in this case to prove the unsoundness of mind and incapacity of the grantor. Chadwell v. Reed, 198 Mo. 359; Jones v. Thomas, 218 Mo. 508; Cutler v. Zollinger, 117 Mo. 92; Richardson v. Smart, 152 Mo. 623. (4) It is urged by defendants that the record discloses that the execution of the deed was procured by fraud and undue influence exerted by plaintiff, Mrs. Koster, Dr. LaBonte and others, over the mind of Mrs. Glebb, and that these parties stood in confidential relations to the grantor in said deed. The record seems to be entirely void of any evidence to support that claim. We fail to discover any evidence whatever tending to show that any of the parties named above was guilty of any fraud or undue influence in connection with the execution of this deed. And if a confidential relation existed, plaintiff has fully complied with the requirement by the burden of proof showing the absence of any undue influence. (5) And in equity cases, the Supreme Court will defer largely to the trial court on all issues of fact, and will not disturb the judgment of the trial court on the ground that the findings are against the weight of the evidence. Jones v. Thomas, 218 Mo. 540; Brecker v. Fillingham, 209 Mo. 583; Tinker v. Kier, 195 Mo. 183; Huffman v. Huffman, 217 Mo. 182.

*Guy B. Park* for defendants.

(1) At the time of the execution of the deed, the grantor was laboring under mental weakness induced

by old age, sickness and disease. In such cases, courts of equity will investigate the consideration and determine its sufficiency, and pass upon the party's mental state and condition; and if two facts concur, viz., inadequacy of consideration and mental imbecility, although the weakness of mind does not amount to idiocy or legal incapacity, the contract or deed will be annulled at the instance of the proper party. Cadwallader v. West, 48 Mo. 483; Kincer v. Kincer, 246 Mo. 419.   (2)   If the relation of confidence and trust between the parties to a deed, which is sought to be set aside on the ground of undue influence; if the mind of the maker is weak and susceptible, and the transaction results beneficially to the grantee and detrimentally to the maker, a presumption of undue influence is raised, and the burden is placed on the one claiming the benefit of the transaction to prove that the act was voluntary and no unfairness was used. Dingman v. Romine, 141 Mo. 466; Cornet v. Cornet, 248 Mo. 234; Ennis v. Burnham, 159 Mo. 518.   (3)   Where the confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the one so availing himself of the position will not be permitted to retain the advantage, although the transaction could not have been impeached if no confidential relation existed. Martin v. Baker, 135 Mo. 495; Ryan v. Ryan, 174 Mo. 279; McClure v. Lewis, 72 Mo. 314.   (4)   The relationship of patient and nurse is confidential. Dingman v. Romine, supra; Hall v. Knappenberger, 97 Mo. 511. (5)   The plaintiff claims the deed was executed for a consideration and so pleads. She will not be permitted to hold under the deed because, if anything, it was a gift.    Cadwallader   v.   West,   48 Mo. 497;   Hall   v. Knappenberger,   97 Mo. 509.   (5)   Where the conveyance is a gift, courts cannot reform it. Pitts v. Weakley, 155 Mo. 134; Ford v. Unity Church Society, 120 Mo. 508; Brownlee v. Fenwick, 103 Mo. 428; Shroyer v. Nickoll, 55 Mo. 264.   (6)   Under allegation of con-

sideration, gift cannot be shown. Hall v. Knappenberger, 97 Mo. 511. In order to entitle plaintiff to a decree reforming the deed, it devolved upon her to show by a preponderance of the evidence a compliance with the terms and conditions of the deed as expressed therein—the payment of the sum of one dollar. Williams v. Husky, 192 Mo. 550. One seeking to have a written instrument reformed for mistake must show such mistake by evidence that is clear and convincing. Fanning v. Doan, 139 Mo. 392; Parker v. Van Hoozer, 142 Mo. 621; Clark v. Transfer Co., 127 Mo. 255; Bartlett v. Brown, 121 Mo. 353.

WALKER J.—This suit was brought in the Circuit Court of Platte County in January, 1917. The petition was in two counts; the first sought the reformation of a deed to real property; and the second to quiet title under the statute. Upon a trial before the court a decree was rendered on the first count denying the relief sought and holding that the deed correctly expressed the mutual intention of the parties; on the second count it was found and adjudged that the plaintiff was the owner in fee of the property described in the deed.

A cross-bill filed by defendants alleged the invalidity of the deed on the grounds of undue influence exerted by plaintiff and others on the grantor, Elizabeth L. Glebb, and that she was, at the time, of unsound mind and incapable of executing a valid transfer of her property. The court denied the relief asked by defendants and dimissed the cross-bill at their costs. Both parties have appealed.

Plaintiff's cause of action more specifically stated is that at the time of the execution of the deed the grantor was the owner of certain lots of ground in Tracy, Platte County, described generally as lots 7 to 18, both inclusive. The deed designates only lots 7 to 12. Plaintiff contends that it was the intention of the

grantor to include in the transfer lots 13 to 18, and the reformation is sought in this particular.   Only the purport of the deed is preserved in the record.   It is as follows:

"Warranty deed, consideration $1, dated November 8, 1916, from Elizabeth L. Glebb to Laura A. Bryant to Lots 7, 8, 9, 10, 11 and 12, Block 1, Tracy, Platte County, Missouri.   Signed by Elizabeth L. Glebb, acknowledged before O. Q. Claflin, notary public, November 8, 1916, and witnessed by O. Q. Claflin, Jr., and Alice Koster.   Recorded in the office of recorder of deeds, at Platte City, Platte County, Missouri, November 10, 1916."

On the same day the deed was executed, as stated in the body of same and in the notary's acknowledgment, a power of attorney was given by the grantor to the plaintiff which is as follows.

"Know all men by these presents, that I, Mrs. E. L. Glebb of Platte City in the County of Platte, State of Missouri, have made, constituted and appointed, and by these presents do make, constitute and appoint Laura A. Bryant of Excelsior Springs in the County of Clay, State of Missouri, my true and lawful attorney in fact, for me and in my name and stead and to my use to grant, bargain and sell all or any real estate of which I may at the present time possess the title, or which I may hereafter acquire, to collect any and all rent due me, from any and all property which I may own or in which I may have an interest; to sign checks for me and to deposit monies in my name, and to do any act which I might myself legally do, hereby giving unto my said attorney in fact full authority and power to do anything whatsoever requisite or necessary to be done in the premises as fully as I could or might do if personally present, with full power of substitution and revocation, hereby confirming and ratifying all that my said attorney in fact shall lawfully do or cause to be done."

[Further provision is made which is noted but not set forth *in haec verba* in the record, that a power of

attorney theretofore granted one G. M. Northrup is thereby revoked.]

"Witness my hand this 8th day of November, 1916, at Kansas City in the County of Wyandotte, State of Kansas.

"MRS. E. L. GLEBB.

"Filed for record Nov. 10, 1916, at 10 o'clock 2 minutes A. M."

The plaintiff was not akin to the grantor, who was a widow about 74 years of age. The defendant Mrs. Shinnabarger was the latter's daughter and her only child; and the other defendants were her grandchildren. The grantor had for several years been afflicted with nephritis or acute inflammation of the kidneys, diagnosed by expert witnesses as Bright's Disease, which finally resulted in her death. To obtain that care and treatment which the intelligent mind recognizes as necessary to relieve, if possible, one suffering from the malady with which she was afflicted, she went or was taken, on the 24th of September, 1916, to a hospital in Kansas City, Kansas. She remained there until the 27th day of October, 1916, when she was, under the direction of the plaintiff, taken by one Le Bonte and a Mrs. Koster to the latter's home in Kansas City, Kansas, where she died on the 10th day of November, 1916. That her death was due to the malady from which she had long been a sufferer, there is no room for question. Her bloated and dropsical condition at the time of her removal from the hospital and her death a short time thereafter from the disease with which she had been afflicted, render the presumption conclusive that she was, at the time of her removal, in the last stages of the disease and rapidly approaching dissolution. Thus much for her physical condition, about which there is no material controversy, at or about the time of the execution of the deed. The relevancy of the facts in regard to that condition is apparent as affording an aid to reason based upon human experience, in determining the state

of the grantor's mind at the time she made the deed; and whether that state was such as to render the grantor easily susceptible to improper influences or incapable of intelligently caring for and disposing of her property on her own volition.

Marshalling the facts for the plaintiff in their least disputable array, they show that at the time of the execution of the deed the grantor had a clear mind, with such an attendant comprehension of her affairs as to enable her to act intelligently, and that she did so act on her own volition, free from ulterior influences.

The correlated facts adduced by defendants to rebut the conclusion which would otherwise flow from the testimony for the plaintiff, are that the grantor, before her admission to the hospital and while there, manifested marked signs of mental weakness and was frequently subject to delusions rendering her incapable of intelligent thought or action; that this unsettled state of mind, which the facts justify us in classifying as a well-defined mania, was due to her physical ailment; that such had been the progress of her disease at the time of her removal from the hospital that her dropsical condition prevented her, although much disposed to sleep, from occupying a recumbent position for any length of time; that natural rest, necessary in health for recuperation and the renewal of vital forces, and more necessary in the enervating presence of disease, was thus denied her, with its consequent physical discomfort and a disturbance of her mental equilibrium; that her disturbed mental condition caused her to consent, if she did consent, to her removal from the hospital, where, it is reasonable to conclude, she had intelligent attention, including such palliating, if it could not be remedial, treatment as her condition demanded; thus environed and anxious, as is the inclination of human nature generally, to secure as much creature comfort as possible, it is urged that she would not, in the wholesome exercise of a sane mind, have consented to a removal to a private house, possess-

ing none of the facilities of a hospital, and where, whether she desired it or not, she was not given, as ordinary human kindness would have prompted, any intelligent medical attention other than for those who were in charge of her to call in two physicians the day before her death.

The contemporaneous, or, as the facts are, the execution of the power of attorney immediately preceding or following that of the deed, does not, when measured by the acts of those whose mental equipoise is not ques-tioned, comport with that average in-telligence which should be manifested in the making of instruments of the character here under consideration. If the making of the deed was a sentient act, the grantor knew full well that upon its delivery she gave the plaintiff complete dominion over the property. If she did not possess this knowledge, and she acted as it is contended she did, on her own volition, what could have prompted her, after having deeded the property to the plaintiff, to formally attempt to confer power upon the latter to represent her in its management?

*Contemporaneous Deed and Power.*

It is a minor matter, but one not unworthy of notice in passing, that the manner of signature of the grantor to these two instruments is entirely different. The deed is signed by "Elizabeth L. Glebb;" the power of attor-ney by "Mrs. E. L. Glebb." This last signature, according to the testi-mony, was made within a short space of time after she had signed the deed, it appearing that the notary brought both instruments prepared for her signature. It is a subject of almost universal knowledge that there is a uniform manner in which each person, evidently from long continued habit, signs his or her name. For example, John Smith does not sign his name in full at one time and at another write it "Jno. Smith" or "J. Smith."

**Different Signatures.**

Ordinarily the difference of one day between the execution of an instrument, as shown by the notary's

certificate and the testimony of witnesses in regard thereto, will, where no question of priority is involved, constitute but a fragile reason for questioning its authenticity. Where, as here, however, the grantor may be said to have been *in extremis,* whether the deed was executed at one time or the other, it matters much, as determinative of her mental capacity, whether it was executed 48 or 24 hours before her death. She died November 10th. The notary's certificate gives November 8th as the date of the execution of the deed. While this is prima-facie evidence of the verity of the date (Burk v. Pence, 206 Mo. 315), the notary who took the acknowledgment testified with little lack of equivocation, that the deed was actually executed the day before the grantor's death and that the date stated in the body of the deed and the certificate of acknowledgment was possibly erroneous, his language when examined by counsel for the plaintiff being: "That deed was signed on the day it was drawn—whether it was the 8th or 9th of November, I am not going to say. There is a possibility I made a mistake in dictation, but I think that is correct, and I am probably mistaken in a day having elapsed between the date of the drawing of the deed and of its signing."

The notary further testified as follows: "Mrs. Bryant (plaintiff) came to my office between nine and ten o'clock one morning and asked me to go with her and talk to a Mrs. Glebb. I went with her to a Mrs. Koster's where Mrs. Glebb then was, and talked to the latter. She said she wanted a power of attorney and a deed to her property in Tracy made to Mrs. Bryant. Mrs. Bryant furnished me with the description of the property which was afterwards embodied in the deed. I took the description and went back to my office, prepared the deed and power of attorney and then returned to Mrs. Glebb's room. After reading them over to her she signed and acknowledged them and I returned to my office. I am quite positive the deed was drawn on

<div style="text-align: right; font-style: italic;">Time of Execution.</div>

the day before Mrs. Glebb died. I am sure there was not a day intervening. I was there on the following day about three o'clock p. m. Mrs. Glebb died a few minutes after I got into the room that day." Asked as to the grantor's mental condition at the time of the execution of the deed, the witness said: "Well I talked to her, I should judge thirty-five minutes the first time I was there, and satisfied myself she was all right mentally, and knew what she was doing and understood fully her acts."

**Mental Capacity.**

The same afternoon and certainly, so far as it is possible to determine from the testimony, not more than an hour or two after the execution of the deed, a Dr. Pearson was called and made an examination of the grantor. In relation thereto, among other things, he says: "I called on Mrs. Glebb professionally shortly after noon on the day preceding her death. She was in a very weakened condition. She was sitting in a chair and her head dropped over onto the side of the back of the chair. She didn't notice me when I went in. Mrs. Koster roused her up, and told her that the doctor had come, and I went to her and asked her how she felt, and she said she didn't know. She asked, then, if I was a doctor; and I think she asked that two or three times —if I was a doctor; and she said, 'I am glad you have come; I want you to cure me.' After that she dropped her head over again and seemed to be taking no notice of what went on. I made something of an examination. I found her feet swollen. I examined her eye-lids, and the puffy condition under her eyes. I questioned about the secretions of the body. She couldn't answer. Mrs. Koster answered those questions. I think I was there pretty nearly half an hour. She was afflicted with nephritis was my diagnosis—kidney trouble. As to her mental condition, I don't think that she knew much about what she was saying or doing. That was my judgment. I base that opinion on her actions when I went in, and on the way she answered my questions,

and the way she dropped over and lost all interest and seemed to fall into a kind of half slumber. I asked her whether she had any pain, whether she had any difficulty of urination. I asked her about her bowels. I got no satisfactory answers to any of them. I couldn't tell how long she had been in that condition of mind, and I could not tell the rapidity of the advancement of the disease; but it was nephritis in the last stages, and it is usually a disease of slow advancement, comparatively slow. I do not think she had sufficient mental capacity to make a deed or engage in a business transaction involving the disposition of her real estate at the time I saw her or to know the natural objects of her bounty or what property she possessed. Judging from the condition as I saw her I could not say whether she had sufficient mentality on the day preceding the date of my visit to have made disposition of her property or engaged in a business transaction. My opinion is that she hadn't been able to transact business for some time.''

It will be seen from the foregoing that in material particulars certain testimony introduced on behalf of the respective parties is contradictory. This contrariety exists as to the mental status of the grantor at the time of the making of the deed. Witnesses for the plaintiff, who were the only ones present on that occasion, testify unequivocally to her mental soundness at that particular time. But for this direct testimony and the absence of any countervailing proof of persons present, we might, on account of the superior intelligence, interest or lack of interest of certain witnesses, be justified in reaching a different conclusion as to grantor's capacity to make the deed. However, when, in addition to this direct testimony, we take into consideration the chancellor's superior opportunity in having seen and heard the witnesses, to weigh their testimony, we feel authorized in deferring to his finding in this regard. [Masterson v.

*Contradictory Evidence.*

Sheahan, 186 S. W. (Mo.) 524; Wavrin v. Wavrin, 220 S. W. (Mo.) 931.]

If the grantor, as the chancellor found, was mentally able to make the deed, it follows, in the absence of any convincing proof to the contrary, that she knew what property she was conveying and that it was correctly described in the deed and comprised what she intended to give to the plaintiff.

*Reformation.*

Taking into consideration, therefore, the nature of the property conveyed to plaintiff as compared with that which by the laws of descent and distribution will be left to the daughter of the grantor, the finding of the trial court is in no sense inequitable.

*Inequitable Deed.*

Plaintiff's contention as to the error of the trial court in the admission of testimony may be disposed of under the general rule that where improper testimony has been admitted in an equitable proceeding is which we are required to review the entire record, the judgment will not be reversed on that ground, but this court will disregard the incompetent testimony and render such a judgment as in equity and good conscience the pleadings and relevant testimony may authorize. [Woodard v. Stowell, 222 S. W. l. c. 821; Koger v. Black, 220 S. W. l. c. 905; Railroad v. Pub. Serv. Comm., 266 Mo. l. c. 341; Rinkel v. Lubke, 246 Mo. l. c. 392; Home Tel. Co. v. Carthage, 235 Mo. l. c. 658.]

*Evidence.*

Having found no error justifying a reversal, the judgment of the trial court is affirmed. All concur.